BENJAMIN W. BULL
AZ Bar No. 009940
JEREMY D. TEDESCO
AZ Bar No. 023497
ALLIANCE DEFENSE FUND
15333 N. Pima Road, Ste 165
Scottsdale, AZ 85260
(480) 444-0020; (480) 444-0028 facsimile
jtedesco@telladf.org

DAVID A. CORTMAN*
GA Bar No. 188810
ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Rd., Ste D-600
Lawrenceville, GA 30043
(770)339-0774; (770)339-6744 facsimile
dcortman@telladf.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| Pastor Clyde Reed; and Good News Presbyterian Church,<br><br>Plaintiffs,<br><br>v.<br><br>Town of Gilbert, Arizona; and Adam Adams in his official capacity as Code Compliance Manager,<br><br>Defendants. | CASE NO. ____________<br><br>VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |

## I. INTRODUCTION

1. The Town of Gilbert has decided that ideological signs (however that is defined) and political signs deserve more protection than religious assembly signs. According to the Town Code, religious assembly signs must be smaller in size, less in number, and displayed for much less time than comparable signs. Such content-based discrimination is clearly unconstitutional. The Code, along with Defendants' enforcement, violate Plaintiffs' civil rights.

## II. JURISDICTION

2. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988, and under state law, particularly Ariz. Rev. Stat. §41-1493.

3. This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343; and over the supplemental state law claims under §1367.

4. This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. §§ 2201, *et seq*.

5. This Court is authorized to issue the requested injunctive relief pursuant to 42 U.S.C. §1983 and Rule 65 of the Federal Rules of Civil Procedure.

6. This Court is authorized to award any damages pursuant to 28 U.S.C. § 1343(4).

7. This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. § 1988 and pursuant to Ariz. Rev. Stat. §41-1493.01(D).

## III. VENUE

8. Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. § 1391(b), in that the events giving rise to the claim occurred within the district.

## IV. IDENTIFICATION OF PLAINTIFFS

9. Plaintiff Clyde Reed is the Pastor of Good News Presbyterian Church and is a citizen and resident of the District.

10. Good News Presbyterian Church ("the Church") is an unincorporated association and is also located in the District.

11. Pastor Reed is charged with the responsibility of representing the Church in its day to day activities, including through preaching of the Word of God and meeting together for worship and fellowship on Sundays and on other days of the

week.

## V. IDENTIFICATION OF DEFENDANTS

12. The Town of Gilbert is a body politic which is able to sue and be sued in its corporate name.

13. The Town has adopted the challenged Town of Gilbert Land Development Code ("Code") sections that discriminate against religious signage.

14. The Town, through its Code Compliance Department, has enforced the challenged Code sections against the Plaintiffs.

15. Defendant Adam Adams is the Code Compliance Manager of the Town's Code Compliance Department and is sued in his official capacity.

16. Defendant Adams enforced the Code against the Plaintiffs recently when he informed the Church that it would be cited if it violated the terms of the Code regarding religious assembly signs.

17. The Town acquiesces in, sanctions, and supports the actions of Defendant Adams in the enforcement of the Code against Plaintiffs.

## VI. STATEMENT OF FACTS

18. Defendants have enacted a Town Code that discriminates against certain signage based on the content of the sign.

19. Ideological signs (which is not defined) are allowed without a permit, may be placed in all zoning districts, may be up to 20 square feet in area and 6 feet in height, and have no time or other limitation. *See* Code, Chap. I, Article 4.402J

20. Similarly, political signs (which is also not defined) are allowed without a permit, may be placed on property zoned for residential use, non-residential use, undeveloped Town property, and Town rights-of-way, may be up to 32 square feet in area and 6 feet in height, and only require that they be removed 10 days following an election, with no time constraint of when they can be posted prior to an election. *See id.* at 4.402I.

21. Religious Assembly Temporary Directional Signs, on the other hand, are

not permitted in the public right-of-way, may not exceed 6 square feet in area nor 3 feet in height, no more than 4 signs may be placed on any property, a permit is required, and they shall not be displayed earlier than 2 hours before and 1 hour after the religious service. *See id.* at 4.402P.

22. All such permitted signs may contain a non-commercial message. *See id.* at 4.402V.

23. The Code also permits Weekend Directional Residential Signs. A total of 15 signs are permitted for each recorded subdivision plat, they may be placed on Town rights-of-way and each sign may be placed beginning 6 p.m. on Friday and ending at 8 a.m. on the following Monday. *See id.* at 4.405B(2).

24. Lastly, the Code permits Homeowners Association Facilities Temporary Signs for 30 days prior to each event and which must be removed within 48 hours of completion of the event. *See id.* at 4.406C(3).

25. This action is brought to challenge the validity of the denial of equal treatment for religious assembly signs and the Town's Code upon which the denial rests.

**<u>The Church's Religious Beliefs</u>**

26. Plaintiffs are Christians who hold sincere religious beliefs that they must meet together with like-minded individuals, teach and preach the Gospel, sing religious songs, pray for their community, and encourage others whenever possible.

27. Plaintiffs believe in what is commonly referred to as the Great Commission.

28. The Bible commands believers in Matthew 28:19-20 to "go and make disciples of all nations, baptizing them in the name of the Father and of the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you."

29. Plaintiffs believe that they should carry out this command by reaching out to the community to meet together on a regular basis.

30. Plaintiffs follow this Biblical directive by displaying signs announcing

their services as an invitation for those in the community to attend.

31. Plaintiffs' services are open to the public and Plaintiffs seek to encourage new people from the community to attend.

32. One way in which the community may learn about Plaintiffs' services is through the signs that are placed announcing the time and location of the services.

33. The more signs that are permitted to be displayed, the more people will receive the invitation.

**The Enforcement of the Code against the Church**

34. The Church currently has about 40 attendees.

35. Due to their small size, the church is limited financially in what they can afford to do to invite others to their meetings.

36. One effective, yet inexpensive means of reaching others is to display signs letting the community know where and when they are meeting.

37. The Church has been meeting at Coronado Elementary School for the past 4 years.

38. For a time, the Church was placing about 17 signs in the areas surrounding the Church.

39. These signs were placed early in the day each Saturday and removed following the services on Sunday mid-day.

40. On September 17, 2005, however, the Church was cited by the Code Compliance Department for exceeding the time limitation of 2 hours before and 1 hour after the service (with a notation on the citation that the date of service was missing from the sign).

41. The penalties for violating the Code range from a notice of violation to substantial fines and time in jail.

42. Since receiving that citation, the Church has reduced the number of signs and the amount of time in which they have placed the signs.

43. More visitors attended the services when all signs were being placed and

when they were being placed earlier on Saturdays.

44. Because the initial citation was received about 17 months ago, the Church recently contacted the Code Compliance Department to inquire as to whether the limitations found in the Code will presently be enforced against the Church if violated.

45. The Church was told by the Code Compliance Manager that there is no leniency under the Code, and that the Church will be cited if it has been found to violate any of the applicable provisions in the Code.

46. The Code Compliance Manager told the Church that it will be cited for a violation of the Code if it puts up signs displaying the time and place of its meetings more than 2 hours before those meetings.

47. The Code Compliance Manager told the Church that the Code forbids it to put up more than 4 signs displaying the time and place of its meetings.

48. The Church has been limiting its speech through signage since receiving the citation fearing that it will again be cited for violating the Code.

49. The Church has a continuing desire to reach out to the community through additional signs that may be placed for longer periods of time than currently permitted under the Code.

## VII. ALLEGATIONS OF LAW

50. All acts of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color and pretense of state law.

51. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivations of their federal and state rights by Defendants.

52. Unless and until the enforcement of the Code is enjoined, the Plaintiffs will suffer and continue to suffer irreparable injury to their rights.

**1. First Cause of Action: Violation of the Free Speech Clause of the First Amendment**

53. Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein.

54. Plaintiffs' signs are speech that is protected by the First Amendment.

55. Defendants' Code impermissibly regulates and restricts speech in the form of signs based on the content of that speech.

56. Signs that are "ideological" or "political" are permitted to a much greater extent than are signs for religious assemblies.

57. Also, residential weekend directional signs are permitted to a much greater extent than similar religious assembly signs.

58. Because such discrimination is based on the content of the signs, it is subject to strict scrutiny: it must further a compelling government interest and be narrowly tailored.

59. Defendants can proffer no interest, let alone one that is compelling, that justifies discriminating against religious assembly signs.

60. Whatever interests Defendants cite, they apply equally to signs that are permitted to a greater extent than religious assembly signs.

61. Further, limiting religious assembly signs in the manner authorized by the Code is not narrowly tailored to justify whatever interest Defendants may create.

62. Moreover, Defendants' Code treats commercial speech more favorably than noncommercial speech.

63. The Code allows weekend residential signs for the purposes of home sales for a longer period of time than religious assembly signs.

64. The Code imposes an unconstitutional prior restraint because it vests Town officials with the unbridled discretion to permit or refuse protected speech without any guidelines or criteria.

65. The Code is overbroad because it sweeps within its ambit protected First

Amendment speech.

66. The overbreadth of the Code chills protected speech by discouraging individuals and groups from placing signs for the purpose of engaging in protected speech based on the religious nature of the sign.

67. Defendants' Code on its face and as applied violates Plaintiffs' rights of Free Speech as guaranteed by the First Amendment to the United States Constitution as incorporated and applied to state action under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully pray that this Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

**2. Second Cause of Action: Violation of the Equal Protection Clause of the Fourteenth Amendment.**

68. Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein.

69. The Code allows groups and individuals similarly situated to religious assemblies, like Plaintiff, greater access to Town property.

70. The Code allows groups and individuals similarly situated to religious assemblies, like Plaintiff, to display signs for greater time periods.

71. The Code allows groups and individuals similarly situated to religious assemblies, like Plaintiff, to display larger signs.

72. The Code allows groups and individuals similarly situated to religious assemblies, like Plaintiff, to display a greater number of signs

73. The Code does not extend those same rights to religious assemblies, like Plaintiff.

74. Defendants can offer no compelling interest to justify their discriminatory treatment of certain religious speech and activities while allowing similar secular speech and activities.

75. The Code facially and as applied violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution

WHEREFORE, Plaintiffs respectfully pray that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

**3. <u>Third Cause of Action: Violation of the Free Exercise Clause of the First Amendment</u>**

76. Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein.

77. Plaintiffs hold religious beliefs that they must reach out to the community and invite them to their religious services where they offer Biblical guidance on how to face contemporary issues.

78. Plaintiffs also communicate their faith to others in public places through invitations to gather together with like-minded individuals for fellowship and receiving religious instruction as an exercise of their sincerely-held religious beliefs.

79. The Code penalizes the exercise of religion by subjecting it to greater restrictions that are not applicable to any other activities.

80. The Code expressly discriminates against religion.

81. The Code imposes an excessive burden on religious exercise that is not generally applicable.

82. The Code burdens religious exercise to a greater extent than non-religious exercise.

83. Defendants have interpreted and applied their Code to disqualify Plaintiffs from equal treatment solely because of the religious nature of Plaintiffs' activities and the religious content and viewpoint of Plaintiffs' speech.

84. Defendants' interpretation and application of the Code impose an excessive burden on Plaintiffs' rights to the free exercise of religion.

85. Both the Code and Defendants' enforcement against Plaintiffs violate several constitutional rights of Plaintiffs, including freedom of speech, free exercise, and equal protection, and therefore give rise to a hybrid claim.

86. No compelling government interest exists which could justify the Code or Defendants' discriminatory enforcement against Plaintiffs.

87. The Code and its enforcement prohibiting equal use requested by the Plaintiffs are not the least restrictive means necessary to serve any legitimate interest which Defendants seek thereby to secure.

88. Defendants' interpretation and enforcement of the Code chill Plaintiffs' freedom of religious discussion and exercise, which are fundamental rights guaranteed Plaintiffs by the First Amendment.

89. The Code facially and as applied thus violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment to the United States Constitution as incorporated and applied to state action under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

**4. Fourth Cause of Action: Violation of the Arizona Religious Freedom Amendment**

90. Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein.

91. The Arizona Religious Freedom Amendment, Ariz. Rev. Stat. §41-1493, states that government shall not substantially burden a person's exercise of religion unless it demonstrates a compelling government interest that is furthered by the least restrictive means.

92. Plaintiffs hold religious beliefs that they must reach out to the community and invite them to services offering Biblical guidance on how to face contemporary issues.

93. Plaintiffs also communicate their faith to others in public places by inviting them to gather together with like-minded individuals for fellowship and receiving religious instruction as an exercise of their sincerely-held religious beliefs.

94. The Code penalizes the exercise of religion by subjecting it to greater

restrictions that are not applicable to any other activities.

95. The Code expressly discriminates against religion.

96. The Code imposes an excessive burden on religious exercise that is not generally applicable.

97. Plaintiffs are severely limited in the exercise of their religion, including reaching out to others, based on the terms of Defendants' Code.

98. Defendants have interpreted and applied their Code to disqualify Plaintiffs from equal treatment solely because of the religious nature of Plaintiffs' activities and the religious content and viewpoint of Plaintiffs' speech.

99. Defendants' interpretation and application of the Code impose an excessive burden on Plaintiffs' rights to the free exercise of religion.

100. No compelling government interest exists which could justify the Code or Defendants' discriminatory enforcement against Plaintiffs.

101. The Code and its enforcement prohibiting equal use requested by the Plaintiffs are not the least restrictive means necessary to serve any legitimate interest which Defendants seek thereby to secure.

102. Whatever interest Defendants seek to further by limiting religious assembly signs, all other signage impacts those same interests in the same manner.

103. Defendants' interpretation and enforcement of the Code chill Plaintiffs' freedom of religious discussion and exercise, which are fundamental rights guaranteed Plaintiffs by Arizona Law.

104. The Code facially and as applied thus violate Plaintiffs' rights under the Arizona Religious Freedom Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

**5.     Fifth Cause of Action: Violation of the Due Process Clause of the Fourteenth Amendment**

105. Plaintiffs reallege all matters set forth in the preceding paragraphs and

incorporate them herein.

106. The Code allows greater display of "ideological" signs.

107. The Code does not define or state what speech activities are considered "ideological."

108. The Code allows for unbridled discretion in determining what does and does not qualify as "ideological."

109. Men of common intelligence must guess and will differ upon what is considered speech that is ideological.

110. There is no warning or notice as to what signs will be deemed to fall in this category or what signs will not.

111. A sign encouraging people to attend a church service easily falls into the category of an ideological sign.

112. Despite the absence of any standards or definitions to guide the Town officials' determination, Defendants did not afford Plaintiffs' sign such a meaning.

113. The Code allows greater display of "political" signs.

114. The Code does not define or state what speech activities are considered "political."

115. The Code allows for unbridled discretion in determining what does and does not qualify as "political."

116. Men of common intelligence must guess and will differ upon what is considered speech that is "political."

117. It is not clear whether this category includes only signs supporting or opposing a candidate; or whether it includes a ballot issue; or any statement addressing issues such as abortion, marriage or religious rights (such as those that are addressed in Plaintiffs' services); or whether it includes all of the above.

118. There is no warning or notice as to what signs will be deemed to fall in this category or what signs will not.

119. The Code facially and as applied violate Plaintiffs' rights under the Due

Process Clause of the Fourteenth Amendment to the United States Constitution

WHEREFORE, Plaintiffs respectfully pray that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

a. That this Court render a Declaratory Judgment declaring that Code §4.402P is invalid facially and as applied under the Constitution of the United States and under the Arizona Religious Freedom Amendment;

b. That this Court issue an Injunction restraining enforcement of the Code § 4.402P in all respects as challenged herein;

c. That this Court retain jurisdiction of this matter for the purpose of enforcing the Court's Order;

d. That this Court award Plaintiffs' costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988, the Arizona Religious Freedom Amendment, and other applicable law;

e. That this Court award nominal and compensatory damages in an amount to be determined by the finder of fact in accordance with the proof, plus interest at the legal rate until paid;

f. That this Court adjudge, decree and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment; and

g. That this Court grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted this 8th day of March, 2007.

**THE ALLIANCE DEFENSE FUND**

s/Jeremy D. Tedesco
Benjamin W. Bull
AZ Bar No. 009940
Jeremy D. Tedesco
AZ Bar No. 023497
15333 N. Pima Rd. Ste 165
Scottsdale, AZ
(480) 444-0020
(480) 444-0028 facsimile
jtedesco@telladf.org

**THE ALLIANCE DEFENSE FUND**

David A. Cortman*
GA Bar No. 188810
1000 Hurricane Shoals Rd., Ste D-600
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 facsimile
dcortman@telladf.org

*Application for admission pro hac vice will be submitted once case is assigned a number and Judge.

# DECLARATION

I, Clyde Reed, verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 7th day of March, 2007, in Apache Junction Arizona.

Clyde Reed
Clyde Reed