1  Robert Grasso, Jr. – Bar No. 015087
    Kim S. Alvarado – Bar No. 018216
2  **GRASSO LAW FIRM, P.C.**
    2430 W. Ray Rd., Suite 3
3  Chandler, AZ 85224
    Telephone (480) 730-5553
4  Facsimile (480) 730-2810
    *rgrasso@grassolawfirm.com*
5  *kalvarado@grassolawfirm.com*
    Attorneys for Defendants

6

7

                IN THE UNITED STATES DISTRICT COURT
8
                IN AND FOR THE DISTRICT OF ARIZONA
9

10  PASTOR CLYDE REED; AND GOOD NEWS   )
      PRESBYTERIAN CHURCH,            )      CV 07-0522 PHX-SRB
11                           )
                      Plaintiffs,   )
12                           )    **DEFENDANTS' CROSS-MOTION FOR**
      vs.                       )           **SUMMARY JUDGMENT**
13                           )
      TOWN OF GILBERT, Arizona; and ADAM   )
14  ADAMS in his official capacity as Code     )
      Compliance Manager,             )       *(Oral Argument Requested)*
15                           )
                     Defendants.   )
16

17       Defendants Town of Gilbert, Arizona (the "Town") and Adam Adams, in his official

18  capacity as the Town's Code Compliance Administrator (collectively, "Defendants"),

19  pursuant to Rule 56, Federal Rules of Civil Procedure, hereby move for summary judgment

20  on all counts in Plaintiffs' Amended Verified Complaint.  This Motion is supported by the

21  concurrently-filed Joint Statement of Facts (JSOF) and supporting exhibits, Separate

22  Statement of Facts (DSOF) and supporting exhibits, and the entire record before the Court.

23       Plaintiffs' Amended Verified Complaint asserts four causes of action: (1) violation

24  of Free Speech Clause of First Amendment (¶¶ 83-97); (2) violation of Equal Protection

25  Clause of Fourteenth Amendment (¶¶ 98-105); (3) violation of Free Exercise Clause of First

26  Amendment (¶¶ 106-121); and (4) violation of Arizona's Religious Freedom Restoration Act

27  (AzRFRA) (¶¶ 122-138).   (Dkt. No. 24.)   In each count, Plaintiffs challenge the

28  constitutionality of the Town's original and amended ordinances from the Gilbert Land

Development Code, Chapter I, Section 4, § 4.402(P), relating to off-site temporary directional signage, both on their face and as applied. Pursuant to the Stipulated Order (Dkt No. 93), only Plaintiffs' claims relating to the amended sign ordinance are at issue.

This Court already has considered and rejected Plaintiffs' arguments relating to the amended ordinance. In its Order dated September 30, 2007, the Court concluded that the Town's amended sign ordinance did not violate the Free Speech Clause of the First Amendment or the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 43.) The Ninth Circuit agreed. *See* 587 F.3d 966 (9th Cir. 2009). The Ninth Circuit concluded that § 4.402(P) was a content-neutral regulation of the time, place, and manner of the display of temporary directional signs that is narrowly tailored to further the Town's interests of aesthetics and traffic safety and leaves ample alternative channels of communication open for Plaintiffs. *See id.* at 976-81. The Ninth Circuit further affirmed this Court's conclusion that the Town's amended sign ordinance "does not favor commercial over non-commercial speech." *See id.* at 982. The Ninth Circuit remanded to allow the Court to evaluate the Plaintiffs' claim that the Town's amended sign ordinance impermissibly discriminates among certain forms of noncommercial speech. *See id.* at 982-83.

Defendants are entitled to summary judgment on all counts in Plaintiffs' Amended Verified Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

The Court is familiar with the factual background of this case, including the sign ordinance at issue. Defendants incorporate by reference the "background" discussion and record citations set forth in the Court's Order denying Plaintiffs' Second Motion for Preliminary Injunction (Dkt. No. 43, at pp. 1-7; No. 24-2, Exhibits 1-3) and the "background" section of the Ninth Circuit's opinion (587 F.3d at 971-72), which specifically discuss the terms of the amended ordinance. Discovery further revealed the following facts relevant to case.

Plaintiffs hold their Sunday church services in space leased from an elementary school. (JSOF, ¶ 6; DSOF, ¶ 3.) In February 2009, Plaintiffs relocated their meeting place to Ryan Elementary School in the City of Chandler. (JSOF, ¶ 5.) The Church consists of about 25-30 adults and 4-10 children. (DSOF, ¶ 4.) The Church conducts a service for one hour at 9:00 on Sunday mornings.[1] (DSOF, ¶ 5.) Plaintiffs also have held events at the school site at 10:15 a.m. on Sundays and on Sunday afternoons. (DSOF, ¶ 6.) Plaintiffs also conduct a weekly meeting at a personal residence in Queen Creek on Wednesday evenings at 7:00, lasting 1-1/2 hours. (DSOF, ¶ 7.) No one from the Town of Gilbert has had any involvement in deciding the type, length, number, day of week, or starting time for any of the Church's events. (DSOF, ¶ 8.)

Plaintiffs have engaged in numerous promotional activities designed to increase attendance to church activities.[2] (DSOF, ¶ 10.) They have maintained a website since 2000. (DSOF, ¶ 12.) They have purchased advertising space in three local newspapers and the yellow pages of the telephone book. (DSOF, ¶ 13.) Pastor Reed and his wife have distributed a pamphlet to persons they meet. (DSOF, ¶ 14.) Pastor Reed has made unsolicited telephone calls to persons he found in the telephone book. (DSOF, ¶ 15.) Plaintiffs also encourage churchgoers to extend personal invitations to others. (DSOF, ¶ 16.) Plaintiffs have not asked churchgoers to provide e-mail addresses of friends or co-workers so that Plaintiffs could send them an e-mail. (DSOF, ¶ 17.) Plaintiffs have not sent unsolicited e-mails to others because Pastor Reed personally believes this type of e-mail is offensive, would be discarded out of hand, and is highly impersonal. (DSOF, ¶ 18.) Pastor Reed agrees that off-site signs also are

---

[1] On weekdays, the premises is used by Ryan Elementary for school activities. (DSOF, ¶ 9.)

[2] In contrast, Plaintiffs' purpose in spreading their religious message is to lead people to a personal belief in Jesus Christ, regardless of whether those people ever attend Plaintiffs' Church. Plaintiffs "consider it a success" if a person comes to a personal belief in Jesus Christ as a result of any outreach effort, even if that person never attends Plaintiffs' Church or attends a different church. (DSOF, ¶ 11.)

impersonal.  (DSOF, ¶ 19.)  Plaintiffs agree that persons making an effort to locate a church are more likely to actually attend that church.  (DSOF, ¶ 20.)

Plaintiffs' other promotional activities have been tied to the close proximity of the meeting location.  Plaintiffs and other churchgoers have "handed out flyers in neighborhoods surrounding the school [Church's meeting location] so people living close to the Church would know the Church was there." (DSOF, ¶ 21.)  Plaintiffs have hired an advertising company to distribute flyers "in neighborhoods surrounding the school."  (DSOF, ¶ 22.) Pastor Reed's practice is to personally hand-out flyers on a weekly basis in neighborhoods surrounding the Church's meeting location.  (DSOF, ¶23.)

Plaintiffs acknowledge that the purpose of off-site, temporary directional signs is to provide passersby with directions to an event.  (DSOF, ¶ 24.)  Plaintiffs also agree that the close proximity of the off-site directional sign to the event is important to the effectiveness of the sign.  (DSOF, ¶ 25.)  Plaintiffs stated:

> The Church currently meets in an elementary school tucked back in a residential community, and so it needs numerous signs to be placed in various areas *close to the Church* so people can follow the signs to get to the services. *Having such signs scattered throughout several towns will not be effective in inviting and directing people to the Church's services.*

(DSOF, ¶ 26) (emphasis added).  Pastor Reed does not believe a sign placed in Tempe or Mesa would be effective in causing a "casual, nonchurched" person to attend his services. (DSOF, ¶ 27.)

Plaintiffs currently are placing numerous off-site signs in the City of Chandler in the area to the south and east of Ryan Elementary (DSOF, ¶ 28), even though they acknowledge that these signs are prohibited under Chandler's ordinance.  (DSOF, ¶ 29.)[3] These signs consist of six 2.5' x 3.5' A-frame signs, and four 1.5' x 2' "real estate" signs (that stick into the ground).  (DSOF, ¶ 30.)  The signs state the name of the church, the website, 9:00 a.m.,

---

[3] According to Plaintiffs, the only signage allowed in the City of Chandler is an on-site banner.  (DSOF, ¶ 29.)  Defendants take no position on the accuracy of Plaintiffs' interpretation of the City of Chandler ordinance.

Sunday, Ryan Elementary, and an arrow. (DSOF, ¶ 31.) Plaintiffs also hang a 4' x 10' purple banner on a chain-link fence, about 3-4 feet above ground, at the southeast corner of the Chandler Heights Boulevard and Gilbert Road intersection, which is located in the City of Chandler. (DSOF, ¶ 32.) Plaintiffs received permission from the owner of that property to hang the purple banner. (DSOF, ¶ 33.) Plaintiffs have had off-site signs stolen, vandalized, and damaged by weather/roadway conditions. (DSOF, ¶ 34.) Plaintiffs do not intend to place any directional signs to the north or west of their meeting location at Ryan Elementary. (DSOF, ¶ 35.)

Plaintiffs have not asked their lessor, the Chandler Unified School District, whether Plaintiffs could post an on-site banner during a weekday because Pastor Reed suspects this would be disallowed. (DSOF, ¶ 36.) Plaintiffs believe it is "common sense" that a temporary directional sign to a Sunday service does not need to be posted on a weekday. (DSOF, ¶ 37.) Plaintiffs do not place signs relating to the Wednesday evening meeting, because that meeting is meant for "insiders' participation." (DSOF, ¶ 38.)

Even at relocating to Chandler, Plaintiffs continued to place signs at one location in Gilbert (the intersection of Chandler Heights Boulevard and Val Vista Road), until just a few weeks before Pastor Reed's deposition on May 18, 2010. (DSOF, ¶ 39.) Pastor Reed does not know whether or not the placement of signs at this location complied with the Town's amended ordinance. (DSOF, ¶ 40.) Plaintiffs did not receive any communication from the Town of Gilbert relating to the placement of these signs. (DSOF, ¶ 41.) Plaintiffs claim they wish to place temporary directional signs near certain intersections within the Town of Gilbert, some *three miles east* of the Church's meeting location, because it would be "possible" that some people at that distance would follow the signs for miles to the church. (DSOF, ¶ 42.) Plaintiffs have not talked to any of the owners of property at these locations to determine whether the owners would consent to the sign placement. (DSOF, ¶ 43.) In the past, Plaintiffs asked for and received permission from various Homeowners' Associations

located in Gilbert to place their temporary, directional signs on the HOAs' properties that abut roadways in Gilbert. (DSOF, ¶ 44.)

Plaintiffs do not place temporary directional signs on sidewalks because they agree such unattended, stationary objects are an obstruction and a safety hazard to persons using the roadway and sidewalk. (DSOF, ¶ 45.) Plaintiffs further agree that unattended, off-site signs should be placed some distance back from the roadway so as not to interfere with roadway users' visibility. (DSOF, ¶ 46.)

Plaintiffs have incurred expenses related to all of their promotional activities. For the budget years provided, the Church's largest promotional expense was newspaper and telephone book advertisements. (DSOF, ¶ 47.)

Plaintiffs acknowledge that other methods of advertising their church exist, but believe they are too inconvenient to be effective. For example, Plaintiffs could have churchgoers carry signs on sidewalks, but believe that leaving an unmanned sign by the roadway is more convenient. (DSOF, ¶ 48.) Plaintiffs also do not ask churchgoers to place signs on their personal property. Plaintiffs' churchgoers live in Tempe, Mesa, Queen Creek, Chandler, and Gilbert, and Plaintiffs believe this is "too far away for a sign . . . to be effective." (DSOF, ¶ 49.)[4]  Plaintiffs do not believe that temporary directional signs are effective in reaching a casual, non-churched person. (DSOF, ¶ 51.) Pastor Reed lives in Apache Junction, but he does not post any signs on his property relating to the Church. (DSOF, ¶ 52.) His personal residence is a 30-minute drive from the Church's Chandler meeting place, and he believes this distance is too far to make a sign effective. (DSOF, ¶ 53.)

Plaintiffs are challenging the Town's amended ordinance because they want to place their off-site, temporary directional signs in the Gilbert public rights-of-way indefinitely. (DSOF, ¶ 54.) Plaintiffs further claim that they want the "same treatment" as political signs,

---

[4] Plaintiffs also maintained that many churchgoers live in residential communities governed by a private contract with a Homeowners' Association, which "often" limit signage on private property. (DSOF, ¶ 50.) Under Plaintiffs' theory then, public property must be compelled to be an alternate venue to persons who voluntarily contract away their expressive rights on their own property.

1   which can be displayed continuously but only during an election season. (DSOF, at ¶ 55.)

2   Plaintiffs acknowledged that a regulation that allowed Plaintiffs to post off-site directional

3   signs continuously, but only during a four-month period every two years, would not fit the

4   purpose of the Church's temporary directional signs, which meets each Sunday for one hour.

5   (DSOF, at ¶ 56.)

6   **II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS ONE AND TWO
7          OF PLAINTIFFS' AMENDED VERIFIED COMPLAINT**

8          As applied to Plaintiffs' activities, Plaintiffs simply want free, off-site billboards on

9   public property – and are trying to misuse a temporary, directional sign ordinance to fit that

10  inapposite goal. The Ninth Circuit affirmed this Court's conclusion that § 4.402(P) is a

11  content-neutral regulation of the time, place, and manner of display of temporary directional

12  signs, is narrowly-tailored to further the Town's interests in aesthetics and traffic safety, and

13  leaves open ample alternative channels of communication. The only legal question left

14  undecided was Plaintiffs' claim that the Town's amended sign ordinance impermissibly

15  discriminates among certain forms of noncommercial speech.

16  **A.   The Town's Ordinance Does Not Impermissibly Discriminate Among
            Noncommercial Speech**

17         In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), the Supreme Court

18  invalidated a total ban on off-site noncommercial advertising, holding that "[a]lthough the

19  city may distinguish between the relative value of different categories of commercial speech,

20  the city does not have the same range of choice in the area of noncommercial speech to

21  evaluate the strength of, or distinguish between, various communicative interests." *Id.* at

22  514.

23         In *National Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988), the Ninth

24  Circuit examined a sign ordinance that prohibited "all signs relating to activity not on the

25  premises on which the sign is located" but that contained exemptions for certain categories

26  of noncommercial signs, including temporary political signs and temporary advertising

27  displays for grand openings and other special events. *Id.* at 247 & n.2. The Court held that

28

1    "[b]ecause the exceptions to the restriction on noncommercial speech are based on content,

2    the restriction itself is based on content." *Id.* at 249 (citing *Metromedia*, 453 U.S. at 520).

3        The Town's amended sign ordinance does not effect a total ban on off-site

4    noncommercial advertising, as in *Metromedia* and *National Advertising*. Rather, it regulates

5    the display of portable signs within the public right-of-way and exempts certain categories

6    of signs from permit requirements. The Ninth Circuit has upheld these types of speaker- and

7    event-based exemptions against First Amendment challenge. *See G.K. Ltd. Travel v. City*

8    *of Lake Oswego*, 436 F.3d 1064, 1076 (9th Cir. 2006); *see also Messer v. City of*

9    *Douglasville*, 975 F.2d 1505, 1509 (11th Cir. 1992) (sign ordinance prohibiting off-premise

10   billboards was content neutral where it was "not based on the viewpoint of the speaker, but

11   based on the location of the signs").

12       Here, the key distinction between the time, place, and manner regulations of political

13   signs and directional signs to a qualifying event is access to the public right-of-way. The

14   Town's Glossary defines the "right-of-way" as "[a] strip of publicly owned land occupied

15   by or planned for a street, utilities, landscaping, sidewalks, trails, and similar facilities."

16   (JSOF, Exhibit B, at p. 17.) The right-of-way may extend for 8-20 feet from the back of the

17   street curb, to include the sidewalk and other land used for public utilities. (DSOF, ¶ 57.)

18   The Town has not opened up the public land surrounding the sidewalk to public debate.

19       This Court must conduct a forum analysis to determine whether the Town's interest

20   in limiting the use of its property to its intended purpose outweighs the interests of Plaintiffs

21   who wish to use it for another purpose. *See Children of the Rosary v. City of Phoenix*, 154

22   F.3d 972, 976 (9th Cir. 1998). Although courts have held that public sidewalks are public

23   fora because they traditionally have been devoted to expressive activity, those cases analyzed

24   public sidewalks in the context of permitting *verbal* speech. *See, e.g., Int'l Soc'y for Krishna*

25   *Consciousness, Inc. v. Lee*; 505 U.S. 672, 674-75 (1992); *Long Beach Area Peace Network*

26   *v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. 2009). No case has held that a public

27

28

sidewalk is a public forum for the purpose of leaving an unattended, stationary object (which coincidentally contains some writing).

The issue here is whether the public land area beyond the sidewalk is a "public forum" for allowing expressive activity in the form of unattended, stationary signs. A designated public forum is a nontraditional forum that the government has opened for expressive activity to the public. *See Children of the Rosary*, 154 F.3d at 976. A limited public forum is a sub-category of a designated public forum, which is a nonpublic forum that the government has intentionally opened to certain groups or to certain topics. *See Cogswell v. City of Seattle*, 347 F.3d 809, 814 (9th Cir. 2003). In a limited public forum, the government may restrict access as long as (1) the restriction does not discriminate to the viewpoint of the speaker, and (2) the restriction is reasonable. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

Here, the public land beyond the sidewalk is a limited public forum. The ordinance itself demonstrates that the Town did not intentionally open this area for public discourse – especially in the form of unattended, stationary signs. The only no-permit temporary signs allowed in the public right-of-way are: (1) political signs, § 4.402(I); and (2) A-frame signs, § 4.402(N).[5] A-frame signs may be placed only on-site or immediately adjacent to the property being advertised, so these essentially are "on-site" signs. In short, the Town has not opened the public land beyond the sidewalk as an area for public discourse through the medium of unattended, stationary signs. *See Center for Bio-Ethical Reform, Inc. v. City of Honolulu*, 455 F.3d 910, 919 (9th Cir. 2006) ("Examples of nonpublic fora include airport terminals (*Lee*, 505 U.S. at 679), highway overpass fences (*Brown v. Cal Dep't of Transp.*, 321 F.3d 1217, 1222 (9th Cir. 2003), and interstate rest stop areas (including perimeter

---

[5] A homebuilder's weekend directional signs also may be placed in the public right-of-way, but only subject to a permit, § 4.405(B)(2). However, these signs are part of a package relating to new construction of residential subdivisions, which only occurs in limited geographic areas. *See* § 4.405(B)(2)(a). Also, the signs must be placed within two miles of the subdivision and are subject to other restrictions, in addition to the detail required in the permitting process. *See* § 4.405(B)(2)(b)-(j).

walkways) (*Jacobsen v. Bonine*, 123 F.3d 1272, 1273-74 (9th Cir. 1997).");  *Cogswell*, 347 F.3d at 814 (voters' guide was a limited public forum); *Children of the Rosary*, 154 F.3d at 978 (bus advertising panels were nonpublic forum).  Therefore, this land area is a limited public forum.

"In limited public fora, a lenient reasonableness standard applies to determine the validity of governmental regulations." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  "The reasonableness analysis emphasizes the consistency of the limitation in the context of the forum's intended purpose." *Cogswell*, 347 F.3d at 817.  The restriction need not be the most reasonable or only reasonable limitation on speech in that forum; and the restriction need not be narrowly tailored.  *Id.*

Here, relating to off-site, temporary signs without a permit, the Town has permitted political signs to be posted in the public rights-of-way.  The Town's sign ordinance defines a political sign as "[a] temporary sign which supports candidates for office or urges action on any other matter on the ballot of primary, general and special elections relating to any national, state or local election." (JSOF, Exhibit B, at p. 22).  Stated another way, these are campaign signs relating to a public event.  Because these signs involve core speech concerning the function of democratic government, the government itself may chose to open public property to the display of these signs. *Perry Educ. Ass'n*, 460 U.S. at 47 (holding that allowing selective access to a forum on a case-by-case basis "does not transform government property into a public forum"); *see Boos*, 485 U.S. at 321 (political speech is core speech subject to heightened protection).[6]  The Town (like every other municipality) allows the campaign signs on public rights-of-way because a political election has no "situs" (unlike a business, church, or school) and thus these signs cannot be considered "off-site" like other signs.  Finally, because elections are seasonal events, the duration of posting political signs

---

[6] In fact, in the cases cited by Plaintiffs, courts have required governments to open public property for campaign speech. *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1408-09 (8th Cir. 1995); *City of Antioch v. Candidates' Outdoor Graphic Serv.*, 557 F. Supp. 52, 59-60 (N.D. Cal. 1982); *Orazio v. Town of North Hempstead*, 426 F. Supp. 1144, 1148 (E.D.N.Y.1977).

is tied to voting periods. *See* § 4.402(I); *see Baldwin v. Redwood City*, 540 F.2d 1360, 1370 (9th Cir. 1976) ("[T]emporary signs are used primarily in connection with elections, which occur relatively infrequently, and the city has further diminished the problem by limiting the period during which a temporary sign may be displayed . . . ."). In short, simply because the Town allows campaign issues to be displayed on public property during election periods does not mean that the Town should be compelled to permit every religious and ideological group (including those not even holding events within Gilbert) to have "free advertising" for their respective causes on public property all the time.

There is no claim that the Town's amended ordinance discriminates on the basis of viewpoint. *Children of the Rosary*, 154 F.3d at 978 (in a nonpublic forum, government may make distinctions based on subject matter and speaker identity, but not based on the speakers' viewpoint). As such, the Town properly can choose to permit speech on public campaign issues on public rights-of-way, while restricting access to other speakers, such as Plaintiffs.

**B.     The Town's Amended Ordinance is Content-Neutral**

As to the other challenges raised by Plaintiffs, the Ninth Circuit engaged in a lengthy, thoughtful analysis of this qualifying event regulation, and properly concluded that it was a content-neutral regulation of signage. *See Reed*, 587 F.3d at 974-79. An enforcement officer merely must determine the elements of "who" is speaking and "what event" is occurring, without assessing the substance of the sign's message, to determine whether the sign complies with the regulations of § 4.402(P). Otherwise, to adopt Plaintiffs' argument, any categorization of signs beyond blank signs would be content-based regulations, which is "absurd" and "without common sense." *Id.* at 978. Because the regulation is content-neutral, intermediate scrutiny applies.

**C.     The Town's Amended Ordinance is a Content-Neutral Regulation of Reasonable Time, Place, and Manner Restrictions**

"Reasonable time, place, and manner restrictions on speech are permissible." *Long Beach Area Peace Network*, 522 F.3d at 1022 (citations omitted). To assess the

constitutionality of a content-neutral sign ordinance, the Court must determine whether the ordinance is narrowly tailored to achieve a significant government interest and leaves open ample alternative channels for communication. *Reed*, 587 F.3d at 989.

There is no dispute that the Town's interests in regulating off-site, temporary, directional signage are significant. *See Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984); *Reed*, 587 F.3d at 979-80. The Town stated its governmental interests in the text of the amended sign ordinance:

- Establishing comprehensive sign regulations that are necessary and in the public interest;

- Promoting effective means of communications;

- Promoting public order by allowing charitable, religious, educational, community service, and other organizations to provide announcement of and directions to events;

- Promoting vehicular and pedestrian safety;

- Promoting the general welfare; and

- Enhancing the Town's community aesthetics.

(DSOF, ¶ 2.)[7]

The regulations of the time, place, and manner of temporary, directional signs are narrowly tailored to promote the Town's significant interests. (Dkt. No. 43, at p. 12.) These regulations are specifically related to the purpose of a temporary directional sign – *i.e.*, traffic direction. Plaintiffs complain that, because they really want to use these signs for general advertising (not traffic direction), the time, place, and manner regulations do not effectively allow the Church to advertise. But such a strawman argument is circular – the temporary directional sign ordinance is not designed to promote free general advertising, so its regulations will not further or be conducive to that purpose. If the Church wants to advertise as it claims, then it can – through the myriad of advertising channels already available. Defendants incorporate by reference the Court's previous findings of facts and conclusions

_____

[7] The Town's significant interests and purposes in regulating all signs within the Town are set forth in § 4.401 of the Land Development Code. (*See* DSOF, ¶ 1.)

1    of law, and the Ninth Circuit's comments that the regulations "actually advance" the aesthetic

2    and safety interests of the Town.  *See Reed*, 587 F.3d at 980.

3           The Town's sign ordinance leaves open ample alternative channels for Plaintiffs to

4    communicate their message.  *See Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 437 (9th Cir.

5    2008) (affirming district court's findings that a school uniform policy limited only one form

6    of student expression but that students had numerous other modes of expression available,

7    such as conversing, publishing articles in school newspaper, joining clubs, and wearing

8    individualized clothing after school).  Plaintiffs have virtually unlimited ways to invite the

9    community to attend their church services. (Dkt. No. 43, at p. 13.)  Moreover, Plaintiffs still

10   can inform people of the date and location of their services via temporary, directional signs

11   – just subject to the reasonable time, place, and manner regulations of the amended

12   ordinance.  If the placement of these signs in Gilbert is not effective in giving directions to

13   persons looking for an event in Chandler, that likely is related more to the considerable

14   distance between the directional sign and the event, rather than anything to do with the

15   Town's sign regulations.  There is no evidence that the Town has interfered with or removed

16   from Plaintiffs a "uniquely valuable or important mode of communication."  *G.K. Ltd.*

17   *Travel*, 436 F.3d at 1080 (quoting *Vincent*, 466 U.S. at 812).

18          In addition, Plaintiffs' Equal Protection claim fails as a matter of law.  "[T]he crucial

19   question is whether there is an appropriate governmental interest suitably furthered by the

20   differential treatment."  *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  For all

21   the reasons set forth above and in the Court's Order (Dkt. No. 43, at pp. 13-16), which the

22   Town incorporates by reference herein, the Town's amended sign ordinance is narrowly

23   tailored to the particular <u>function</u> of temporary, directional signs (*i.e.*, giving directions to

24   passersby for upcoming or ongoing events).  As such, Plaintiffs' Equal Protection claim fails.

25   **II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS THREE AND**

26   **FOUR OF PLAINTIFFS' AMENDED VERIFIED COMPLAINT**

27          Defendants are entitled to judgment as a matter of law on Plaintiffs' claims under the

28   Free Exercise Clause of the First Amendment and the Arizona Religious Freedom

Restoration Act (AzRFRA), A.R.S. § 41-1493.01.  The Town's Amended Sign Ordinance is a neutral law of general applicability that is rationally related to a legitimate governmental purpose, and any burden that the ordinance imposes on Plaintiffs' religious practice is incidental and not sufficient to state a claim under A.R.S. § 41-1493.01.

**A.     The Town's Amended Sign Ordinance is a Neutral Law of General Applicability.**

The Free Exercise Clause prevents government from regulating religious beliefs.  *See Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940).  Government is not, for example, permitted to require affirmation of a particular religious belief, penalize any particular belief, or impose particular restrictions on individuals or groups because they hold a particular religious belief.  *See Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990).[8]  However, the Free Exercise Clause "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  *Id.* at 879.  The Free Exercise Clause "'embraces two concepts[]-freedom to believe and  freedom to act.'  The first is absolute, but, in the nature of things, the second cannot be.  Conduct remains subject to regulation for the protection of society."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1128 (9th Cir. 2009) (quoting *Cantwell*, 310 U.S. at 303-04).

A law is neutral and of general application if it does not aim to infringe upon or restrict practices because of their religious motivation and does not selectively impose burdens only on conduct motivated by religious belief.  *See id.* at 1130, 1134. (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 543 (1993)).  A

---

[8] In response to *Smith*, Congress enacted the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb.  The Supreme Court subsequently invalidated the Act as applied to States and their subdivisions.  *See City of Boerne v. Flores*, 521 U.S. 507 (1997); *see also San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1030 (9th Cir. 2004) (discussing *Smith*, the Act, *City of Boerne*, and other Supreme Court precedent).  In the present case, Plaintiffs have asserted claims under the First Amendment, to which the *Smith* analysis applies, and AzRFRA.

neutral law of general applicability does not implicate the Free Exercise Clause at all. *See Jacobs*, 526 F.3d at 439.

Here, the Town's amended sign ordinance is neutral and generally applicable. The Town's temporary directional sign ordinance allows non-profit organizations to display, without going through the permit process, off-site temporary signs to provide passersby with directions to a qualifying event – a benefit not afforded to commercial businesses. The ordinance applies to any type of non-profit organization (be it religious, charitable, community service, or educational) and to any type of event, assembly, gathering, activity, or meeting that is sponsored, arranged, or promoted by such an organization. In other words, the same regulation applies to Plaintiffs' church services, a YMCA soccer tournament, a Girl Scouts car wash, a March of Dimes 10K run, or a school's carnival. Thus, because the amended ordinance applies uniformly throughout the entire Town, does not apply varying treatment on the basis of religion, and the Town may further its interests in community aesthetics and traffic safety by regulating the posting of off-site, temporary directional signs, any alleged burden upon Plaintiffs' free exercise of religion does not violate the First Amendment. *See Jacobs*, 526 F.3d at 439; *San Jose Christian Coll.*, 360 F.3d at 1032.

**B.      The Ordinance Does Not Substantially Burden Plaintiffs' Religious Practices Under the Arizona Religious Freedom Restoration Act.**

Plaintiffs' AzRFRA claim fails because the Town's amended ordinance does not substantially burden their exercise of religion. Under AzRFRA, government may not "substantially burden" the exercise of religion, even if the burden results from a law of general applicability, unless the law passes strict scrutiny analysis. A.R.S. § 41-1493.01(B). "A party who raises a religious exercise claim . . . under [AzRFRA] must establish three elements: (1) that an action or refusal to act is motivated by a religious belief, (2) that the religious belief is sincerely held, and (3) that the government action substantially burdens the exercise of religious beliefs." *State v. Hardesty*, 222 Ariz. 363, 366, 214 P.3d 1004, 1007 (2009). A "substantial burden," however, does not mean "trivial, technical or de minimis [sic] infractions." A.R.S. § 41-1493.01(E).

1    This district looks to federal cases interpreting "substantial burden" under the federal

2    Religious Freedom Restoration Act on which Arizona's statute was based. *See Seidman v.*

3    *Paradise Valley Unified Sch. Dist.*, 327 F. Supp. 2d 1098, 1118 (D. Ariz. 2004). A

4    "substantial burden" on the exercise of religion means a person must be "forced to choose

5    between following the tenets of their religion and receiving a governmental benefit . . . or

6    coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."

7    *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008). Stated

8    another way, "substantial burden" is "substantial pressure on an adherent to modify his

9    behavior and to violate his beliefs" to avoid criminal prosecution or receive a governmental

10   benefit. *Id.* at 1073 n.15; *see Hobbie v. Unemployment Appeals Comm'n of Florida*, 480

11   U.S. 136, 140-41 (1987).

12       Here, the Town's amended sign ordinance does not have any effect on Plaintiffs'

13   exercise of religion. Plaintiffs have alleged that their religious beliefs require them to "meet

14   together with like-minded individuals, teach and preach the Gospel, sing religious songs,

15   pray for their community, and encourage others." (Dkt. No. 24, at ¶ 42.) The Town's

16   amended sign ordinance has no impact on any of these activities, and Plaintiffs have alleged

17   none. Plaintiffs further allege that "they should carry out" a Biblical directive to "make

18   disciples of all nations" by "reaching out to the community to meeting together on a regular

19   basis" and inviting community members to attend their services. (Dkt. No. 24, at ¶¶ 44-46.)

20   Again, the Town's amended sign ordinance imposes no burden on any of these activities.

21   Finally, Plaintiffs have acknowledged that their religious motivation is to win converts to

22   Christianity, regardless of whether those converts ever attend their church. (DSOF, ¶ 11.)

23   In contrast, Plaintiffs' motive in advertising their church services through signage and other

24   means is to increase church attendance. (DSOF, ¶ 58.)

25       As the Court already found, Plaintiffs have numerous, available avenues to proselytize

26   to potential converts or to invite people to their services. (Dkt. No. 43, at p. 13.) Pastor Reed

27   and his parishioners may invite directly friends, family members, and neighbors to the

28

1  services, distribute leaflets in their neighborhoods or on the street corner, send e-mail

2  messages, mail letters, post signs in their front yards or at their places of business, advertise

3  in the phone book or newspaper, or walk the sidewalks or parks with posters concerning

4  information about the church.  And, importantly, Plaintiffs may post temporary directional

5  signs inviting passersby to their services that comply with the reasonable time, place, and

6  manner regulations of the Town's amended sign ordinance.  As such, there is *no* burden on

7  Plaintiffs' exercise of religion, as a matter of law.  *See Seidman*, 327 F. Supp. 2d at 1118

8  (finding that a school district's refusal to post a parent's personalized tile with a religious

9  message on a school wall did not burden the parent's religion in any way).

10        Plaintiffs do not even allege that they have been "forced to choose between following

11  the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary

12  to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation*, 535

13  F.3d at 1070.   Instead, Plaintiffs merely allege that, with unfettered, unlimited, free

14  advertising of their church through this particular type of signage, "more people will receive

15  the invitation."  (Dkt. No. 24, at ¶ 49.)   But the Free Exercise Clause and AzRFRA (or

16  federal RFRA) have never been interpreted or applied to require government to allow

17  unlimited, free promotion of a religious organization's beliefs or activities.  *See id.* at 1073

18  ("Never to our knowledge has the Court interpreted the First Amendment to require the

19  Government itself to behave in ways that the individual believes will further his or her

20  spiritual development or that of his or her family."); *Guru Nanak Sikh Soc'y of Yuba City v.*

21  *County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) ("'[A] substantial burden' must place

22  more than an inconvenience on religious exercise.")  The Town is not constitutionally

23  required to afford Plaintiffs the easiest, least expensive, most convenient means of

24  advertising their message to the masses.  *See Vincent*, 466 U.S. at 812 ("[T]he First

25  Amendment does not guarantee the right to employ every conceivable method of

26  communication at all times and in all places."); *Reed* 587 F.3d at 980 ("[T]he test is not

27  convenience or optimal display.")  Plaintiffs' allegations simply do not rise to the level of a

28

burden on religious exercise, let alone a substantial burden.  Thus, summary judgment on their AzRFRA claim is also appropriate.

**IV.**   **CONCLUSION**

For the foregoing reasons, Defendants Town of Gilbert and Adam Adams respectfully request that this Court enter summary judgment against Plaintiffs on all claims in Plaintiffs' Amended Verified Complaint.

RESPECTFULLY SUBMITTED this 27th day of August, 2010.

**GRASSO LAW FIRM P.C.**


By     s/ Kim S. Alvarado
Robert Grasso, Jr.
Kim S. Alvarado
2430 W. Ray Rd., Suite 3
Chandler, AZ  85224
Attorneys for Defendants

1

CERTIFICATE OF SERVICE

2          I hereby certify that on this 27th day of August, 2010, I electronically transmitted the

3   attached document to the Clerk's Office using the CM/ECF System for filing, and by mail

4   on the following who are not registered participants of the CM/ECF System:

5

6   Benjamin W. Bull, Esq.
    Jeremy D. Tedesco, Esq.
7   **ALLIANCE DEFENSE FUND**
    15333 North Pima Road, Suite 165
8   Scottsdale, Arizona  85260
    *jtedesco@telladf.org*
9       Attorneys for Plaintiffs

10  David A. Cortman
    **ALLIANCE DEFENSE FUND**
11  1000 Hurricane Shoals Road, Suite D-600
    Lawrenceville, Georgia 30043
12  *dcortman@telladf.org*
        Attorneys for Plaintiffs

13

14
    By  s/M.Halligan
15

16

17

18

19

20

21

22

23

24

25

26

27

28