Robert Grasso, Jr. – Bar No. 015087
Kim S. Alvarado – Bar No. 018216
Jenny J. Winkler – Bar No. 019032
**GRASSO LAW FIRM, P.C.**
2430 W. Ray Rd., Suite 3
Chandler, AZ 85224
Telephone (480) 730-5553
Facsimile (480) 730-2810
*rgrasso@grassolawfirm.com*
*kalvarado@grassolawfirm.com*
*jwinkler@grassolawfirm.com*
   Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PASTOR CLYDE REED; AND GOOD NEWS PRESBYTERIAN CHURCH,<br><br>              Plaintiffs,<br><br>    vs.<br><br>TOWN OF GILBERT, Arizona; and ADAM ADAMS in his official capacity as Code Compliance Manager,<br><br>              Defendants. | CV 07-0522 PHX-SRB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Defendants Town of Gilbert, Arizona (the "Town") and Adam Adams, in his official capacity as the Town's Code Compliance Administrator (collectively, "Defendants"), pursuant to Rule 56, Federal Rules of Civil Procedure, hereby respond to Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Support Thereof (*See* Dkt. No. 100). This Response is supported by the Joint Stipulated Statement of Facts (JSOF) and supporting exhibits (*See* Dkt. No. 99), Defendants' Separate Statement of Facts in Support of their Cross-Motion for Summary Judgment (DSOF) and supporting exhibits (*See* Dkt. No. 98), Defendants' Response to Plaintiffs' Statement of Undisputed Facts and Controverting Statement of Facts (DCSOF) and supporting exhibits filed herewith, and the entire record before the Court.

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THE AMENDED ORDINANCE IS A CONTENT-NEUTRAL REGULATION OF THE TIME, PLACE, AND MANNER OF DISPLAY OF TEMPORARY SIGNS WITHIN THE PUBLIC RIGHT-OF-WAY

In an apparent effort to reassert claims that both this Court and the Ninth Circuit have rejected, Plaintiffs pluck various sign regulations from Gilbert's Land Development Code and argue at length that the regulations must be subjected to strict scrutiny because a Gilbert officer must "read" a sign to determine how to apply the Code. But the Ninth Circuit in this case already has addressed – and rejected – the overly-facile application of the "officer must read it" test that Plaintiffs urge upon the Court:

> This case also highlights the absurdity of construing the "officer must read it" test as a bellwether of content. If applied without common sense, this principle would mean that every sign, except a blank sign, would be content based. While a Gilbert officer needs to briefly take in what is written on the Qualifying Event Sign to note who is speaking and the timing of the listed event, this "kind of cursory examination" is not akin to an officer synthesizing the expressive content of the sign. We conclude that § 4.402(P) is not a content-based regulation: It does not single out certain content for differential treatment, and in enforcing the provision an officer must merely note the content-neutral elements of who is speaking through the sign and whether and when an event is occurring.

*Reed v. Town of Gilbert*, 587 F.3d 966, 978-79 (9th Cir. 2009) (internal citations omitted). Plaintiffs' argument and supporting record citations to the effect that Gilbert officials "conceded" that they have to read a sign in order to determine which provision of the Code to apply simply misses the mark. (*See* Dkt. No. 100, at p.4.)[1] The same is true of Plaintiffs' argument that the regulations impermissibly favor commercial over noncommercial speech; this issue already has been decided in the Town's favor. *See Reed*, 587 F.3d at 982 ("The

---

[1] Plaintiffs' selective quotation of deposition testimony also is misleading. (*See* Dkt. No. 100, at pp. 3-4.) Employees of the Town's Code Compliance Department all testified that they would determine what section of the Code to apply to a sign by examining identifying elements such as speaker and location. (DCSOF at ¶ 53.) As the Ninth Circuit noted, a Gilbert officer examining these content-neutral elements in connection with enforcing the Code is not making a content-based determination. *See Reed*, *supra*.

district court did not abuse its discretion in concluding, after close examination, that the Sign Code does not favor commercial speech over non-commercial speech . . . .").

The only question relating to Plaintiffs' free speech claims remaining for decision in this case is Plaintiff's claim that the Town's amended sign ordinance "impermissibly discriminates among certain forms of noncommercial speech." *Id. at* 983. Plaintiffs argue that the sign regulations are content-based because they treat "[n]on-profits, politicians, homeowners associations, and builders . . . differently based on their identity." (*See* Dkt. No. 100, at p.7.) This is inaccurate. The Town's Land Development Code regulates ***the use of land within the Town***, including the type of use at issue in this case – the placement of temporary, off-site advertisements for an event.[2] For example, temporary signs advertising a builder's open house relate to the event of developing a new residential subdivision within Gilbert. *See* Town of Gilbert Land Development Code, Chapter 1, Article 4.4, Sec. 4.405(B) (*See* Dkt. No. 99, Exh. A, at p.22). Temporary signs advertising a political candidate for office are tied to the event of an election for public office. *See id.* at Sec. 4.402(I) (*See* Dkt. 99, Exh. A, at p. 4). And temporary signs advertising a community event all relate to a specific event (worship service, fundraiser, rally, *etc.*) taking place within a specific period of time. *See id.* at Sec. 4.402(P) (*See* Dkt. No. 99, Exh. A, at p. 8).[3] All of these signs are

---

[2] Division 4 of the Code addresses the regulation of numerous land uses, including encroachments, projections over height limits, lighting, outdoor storage, refuse and recycling enclosures, signs, swimming pools, utilities, fences, parking and loading areas, driveways, landscaping, and satellite dishes. *See* www.ci.gilbert.az.us/planning/ldc.cfm.

[3] Plaintiffs' argument that homeowners' associations (HOAs) receive differential treatment under sign regulations evidently refers to the fact that HOAs are permitted to post signs *within the HOA's residential subdivision* (*i.e.*, on-site) regarding events held *within the subdivision* (on-site). It is difficult to see how this regulation has any relevance here. Plaintiffs do not own property in the Town of Gilbert. What is at issue in this case is Plaintiffs' desire to place temporary, off-site advertisements for a Chandler event within the Town's public right-of-way. This Court properly has focused its analysis on the Town's regulation of temporary, off-site signs within the public right-of-way.

subject to reasonable and permissible time, place, and manner regulations, and none of those regulations is content-based.

In particular, the "time" regulations about which Plaintiffs complain are all event-based. The Ninth Circuit has upheld these types of speaker- and event-based regulations. In *G.K. Limited Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006), the City of Lake Oswego enacted a sign ordinance that, similar to the ordinance at issue in this case, exempted temporary signs from the requirement to obtain a permit as long as the temporary sign was placed within a specified period triggered by the occurrence of the enumerated events, such as an election or the sale, lease or rental of property. *Id.* at 1077. The Court concluded that the exemptions were speaker- and event-based, and content neutral:

> [T]he Sign Code reflects the City's preference for not subjecting certain entities . . . to the requirements of the permitting and fee scheme. The exemptions are purely speaker based according to the City's reasonable construction of the provision and say nothing of the city's preference for the content of these speakers' messages, nor do they allow the City to discriminate against disfavored speech. . . .
>
> Such exemptions indicate the City's recognition that during certain times, more speech is demanded by the citizenry because of the event (e.g., a real estate transaction or election) but the City does not limit the substance of this speech in any way. The exemption for temporary signs does not manifest the City's desire to prefer certain types of speech or regulate signage by its content.

*Id.* at 1077-78. Notably, the *G.K. Limited* Court rejected the very argument that Plaintiffs make in this case – that the ordinance was content-based because an officer must read the sign in order to determine the speaker and the event. *See id.* at 1078. It also rejected the argument that exempting noncommercial speakers from permit and fee requirements rendered the ordinance content-based, as Plaintiffs argue here. *See id.* at 1077.

What is at issue in this case is the Town's regulation of the placement of portable, temporary signs *within the Town's right-of-way*. Specifically, Plaintiffs want to place their off-site, temporary directional signs in the public rights-of-way for an indefinite period of time. (*See* Dkt. No. 102, at ¶ 54.) The Code prohibits anyone – not just Plaintiffs – from doing that.    The Town's Land Development Code defines the "right-of-way" as "[a] strip

of publicly owned land occupied by or planned for a street, utilities, landscaping, sidewalks, trails, and similar facilities. (*See* Dkt. No. 99, Exh. B, at p. 17.) Depending on the street and the specific section of the street, the right-of-way may extend for 8-20 feet from the back of the street curb, to include the sidewalk and other land used for public utilities. (*See* Dkt. No. 98, at ¶ 57.) The inherent purpose of the public right-of-way is to allow roadway users to get from Point A to Point B as safely and efficiently as possible. Any stationary object within the public right-of-way presents a potential hazard. The Town permanently affixes certain stationary objects within its rights-of-way, such as light poles, traffic signs, utility boxes, or landscaping, after studying the roadway layout and traffic patterns and ensuring that the placement of the object will not create an undue barrier to user movement or visibility. The Town regulates others' placement of temporary objects (including signs) in the right-of-way keeping the issues of traffic safety, visibility, visual clutter, aesthetics, and ease of compliance and enforcement in mind.

The Code prohibits the placement of objects within the public right-of-way except for the following temporary signs: (1) signs that support candidates for office or urge action on any other matter on the ballot of primary, general and special elections relating to any national, state or local election–defined as "political signs," § 4.402(I) (Dtk. No. 99, Exh. A, at p. 4); (2) one (1) A-frame sign immediately adjacent to the property being advertised (essentially, on-site signs where the right-of-way directly abuts private property), § 4.402(N) (*See* Dkt. No. 99, Exh. A, at p. 6); and (3) up to fifteen (15) temporary directional signs relating to new construction of a residential subdivision within Gilbert, only with a permit and only within two miles of the subdivision,§ 4.405(B)(1), (2) (*See* Dkt. No. 99, Exh. A, at pp. 22-23). The display of each of the enumerated signs is temporary and time-limited according to the duration of the "event" being advertised. Signs relating to primary, general, and special elections may only be displayed prior to and for ten days following an election. (*See* Dkt. No. 99, Exh. A, at p. 4). An on-site A-frame sign may be displayed only during "business hours"

when the property is open to the public. (*See* Dkt. No. 99, Exh. A, at p. 8).[4] And temporary directional signs for new residential subdivision open houses in Gilbert may be displayed only over the weekend, only with a permit, only during the permit's term, and only within two miles of the new residential subdivision being advertised. (*See* Dkt. No. 99, Exh. A, at p. 24).

Similarly, the total number of hours that a temporary directional sign to an event is displayed is determined not by the message of the sign, but by the duration of the event being advertised. For example, if Plaintiffs held events from sun-down on Friday to sun-up on Monday morning, they could place their temporary directional signs twelve hours before sun-down on Friday and leave them up all weekend long, just like a homebuilder. Unlike a homebuilder, however, Plaintiffs would not be required to obtain a permit, nor would they be limited to displaying the signs within a two-mile radius of the location of their event.[5] Moreover, Plaintiffs could hold an event every day of the week and display their signs accordingly. In sum, the limitations about which Plaintiffs complain are of Plaintiffs' own choosing and not a function of any discriminatory repression of speech. *See G.K. Limited*, 436 F.3d at 1077 ("That the law affects plaintiffs more than other speakers does not, in itself, make the law content based.").

As set forth in Defendants' Cross-Motion for Summary Judgment, the public right-of-way is a limited public forum. (*See* Dkt. No. 97, at pp. 9-10.) In a limited public forum, the government may restrict access as long as (1) the restriction does not discriminate to the viewpoint of the speaker, and (2) the restriction is reasonable. *Perry Educ. Ass'n v. Perry*

---

[4] Also, if Plaintiffs had property within the specified zoning areas of Gilbert where this regulation applies, they could do the same. Plaintiffs are unable to take advantage of this regulation, not because the amended ordinance is discriminatory, but because they do not own property in Gilbert.

[5] Also, unlike a homebuilder, Plaintiffs may advertise their Chandler events within the Town of Gilbert. In contrast, homebuilders of Chandler subdivisions are not granted permits to display signs within the Town of Gilbert. (*See* Dkt. 99, Exh. A, at pp. 22-23.)

*Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).  The Town's regulation of the public right-of-way meets this test.

Determining whether a restriction on speech in a limited public forum is viewpoint discriminatory turns on the nature of the forum in relation to the subject matter limitation; "if the speech at issue does not fall within an acceptable subject matter otherwise included in the forum, the State may legitimately exclude it from the forum it has created." *Cogswell v. City of Seattle*, 347 F.3d 809, 815 (9th Cir. 2003).  And the reasonableness of a governmental restriction limiting access to a nonpublic forum is "assessed 'in light of the purpose of the forum and all of the surrounding circumstances,'" emphasizing "the consistency of the limitation in the context of the forum's intended purpose." *Id.* at 817 (quoting *Cornelius v. NAACP*, 473 U.S. 788, 789 (1985) and citing *DiLoreto v. Downey Unified Sch. Dist.*, 196 F.3d 958, 967 (9th Cir. 1999)).

Here, the Town has chosen to open the public right-of-way on a very limited basis to public campaign signs, to owners and lessors of Gilbert property wishing to advertise *on-site* during business hours (limited to one A-frame sign), and to developers of new residential subdivisions in Gilbert within a geographically circumscribed area (with a permit). Plaintiffs' temporary directional signs do not fall within this limited subject matter, and neither do a lot of other temporary signs.  That the restrictions are reasonable is evident by examining the consistency with which the Town limits access to the public right-of-way.[6]  All of the

---

[6] Plaintiffs have attempted to supplement the record through Plaintiff Reed's affidavit and numerous photographs to argue the Town applies "far more lenient restrictions" to signs other than Plaintiffs'. (*See* Dkt. No. 101.) The photographs attached to the affidavit purport to show "the proliferation" of signs within the public right-of-way. (*Id.* at 3.) The Town has moved to strike this affidavit as both untimely and lacking in foundation. Even if the Court were to consider this "evidence," the affidavit and photographs do not support Plaintiffs' argument. First, in most of the photographs, it is impossible to tell whether the signs shown are, in fact, located within the public right-of-way which, as noted earlier, is located anywhere from 8-20 feet back from the curb, depending on the exact location. (*See* Affidavit of Adam Adams, DCSOF, Exhibit A at ¶ 5.) Second, even assuming that many of the signs depicted in the photographs actually are located within the right-of-way, this only establishes

permissible uses of the right-of-way are, by virtue of the subject event, limited in number, duration, and/or geographic scope, ensuring that the Town's significant interests in promoting effective communication, public order, vehicular and pedestrian safety, the general welfare, and community aesthetics are furthered while at the same time recognizing that "during certain times, more speech is demanded by the citizenry because of the event." *G.K. Limited*, 436 F.3d at 1077-78.[7]

Concerning the placement of an A-frame sign, the Code requires placement of one sign per property immediately adjacent to that property during "open" hours, which makes enforcement and compliance much easier. As the Supreme Court has recognized, property owners "have strong incentives to keep their own property values up and to prevent 'visual clutter' in their own yards and neighborhoods – incentives markedly different from those of persons who erect signs on others' land, in others' neighborhoods, or on public property." *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994). If the sign is improperly placed or is blocking the right-of-way, the Town immediately can remedy the problem by communicating with a person at the property. These signs also encourage passers-by to patronize property owners in Gilbert, which furthers the Town's interests. The "one per property" regulation limits the number of signs to a finite number of properties. As stated above, if Plaintiffs' church was located in Gilbert within the specific zoning districts, they likewise could place an A-frame sign, too, during the hours the church is open.

---

that others are violating the Land Code. If anything, it shows the scope of the problem that the Town is attempting to address through the Code.

[7] Municipalities and courts must walk a fine line in this regard, avoiding content-based distinctions while at the same time recognizing that certain speech, at certain places, and even at certain times, is in fact accorded higher protection under the First Amendment. *See, e.g., Citizens United v. Federal Election Comm'n*, -- U.S.--, 130 S. Ct. 876, 892 (2010) (recognizing that political speech is central to the meaning and purpose of the First Amendment and applying strict scrutiny to a federal statute regulating same); *Whitton v. City of Gladstone*, 54 F.3d 1400, 1403-04 (8th Cir. 1995) (invalidating pre-election durational limit on political signs).

- 8 -

By requiring developers of new residential subdivisions to obtain a permit and limiting the number, location, and size of signs to areas surrounding the subdivision under construction within Gilbert, the Town can easily track down violators and issue citations, ensuring that the public right-of-way remains free of visual clutter and debris. In addition, an easily-identifiable, limited number of residential subdivisions are under construction in Gilbert at any given time and for limited periods of time. The nature of this event, in practice, confines these signs to a limited number, duration, and locations. These signs also promote home ownership within Gilbert, again an interest of the Town.

Finally, because federal and state laws require that the person or entity posting a political advertisement identify themselves, the Town easily can track down the responsible party for a sign that does not meet size or set-back requirements or that is left within the right-of-way after an election has concluded and demand compliance. *See, e.g.,* 2 U.S.C. § 441d(a); A.R.S. § 16-912. Moreover, a public election is the very heart of representative government, and the Town has an interest in supporting these public event.

Allowing such narrowly circumscribed access to public rights-of-way does not require the Town to throw open its rights-of-way to anyone wishing to post advertisements on public property free of charge. *See Cogswell*, 347 F.3d at 817-18 (noting that "the government has substantial leeway in determining the boundaries of limited public fora" and "is not required to allow the free exchange of ideas" in such fora).

## II. THE CODE IS NEITHER VAGUE NOR OVERBROAD

Plaintiff next argues that the sign regulations are vague because "[t]here are no guidelines in the Sign Code to help government employees determine which category a sign falls into if it has two different kinds of speech on it." (*See* Dkt. No. 100, at p. 9.) The sole basis for this argument is the Town's Code Compliance employees' answers to hypothetical questions posed by Plaintiffs' counsel during depositions in which he asked Gilbert officials to explain how they would apply the provisions of the Code to a temporary directional sign that also contained a political message. This is not proper evidence that the Code is

- 9 -

"impermissibly vague."  First, the questions posed by Plaintiffs' counsel were purely hypothetical – it is undisputed that the signs at issue in this case are temporary directional signs to Plaintiffs' church services that do not carry any political or other message.  In fact, the Town employees involved in enforcing the sign regulations testified that they have never seen a sign like that proposed in Plaintiffs' hypothetical. (*See* Dkt. No. 100, Exh. 3, at p. 30; and Exh. 4, at p. 31.)  Second, this District, the Ninth Circuit, and the Supreme court have all rejected "attempts to evade a regulation by appending a message aimed at transforming the speech."  *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 981 (9th Cir. 1998) (discussing cases).  Hypothetically tacking a political message onto a temporary directional sign does not transform the sign into a political sign, and it does not render the sign regulations unconstitutionally vague.  *See id.* (essential issue-oriented nature of advertisements that rendered them "ideological communications" could not be changed "by simply adding an offer to purchase a bumper-sticker containing a political or religious message").

Regarding Plaintiffs' argument that the sign regulations are overbroad, this Court already has concluded that the Town's regulation of the time, place, and manner of temporary, directional signs is narrowly tailored to promote the Town's significant interests. (*See* Dkt. No. 43, at p. 12.)  These regulations are specifically related to the purpose of a temporary directional sign – *i.e.*, directing passersby to an ongoing event.  Plaintiffs' complaint that the regulations do not allow them to effectively advertise their service simply highlights Plaintiffs' tortured application of the Code to the facts of this case.  The provision of the Code regulating temporary directional signs is not designed to promote free general advertising.  The regulations are intended to – and do – advance the aesthetic and safety interests of the Town.  *See Reed*, 587 F.3d at 980.

### III.    THE CODE DOES NOT INFRINGE ON PLAINTIFFS' FREEDOM OF RELIGION

Plaintiffs torture the facts even further in advancing their free exercise and Arizona Religious Freedom Restoration Act claims.  In an effort to demonstrate that the Code is not

neutral and generally applicable, Plaintiffs argue that the sign regulations "strictly limit[] the signage of religious organizations, but place[] more lenient restrictions on similar non-religious signs." (*See* Dkt. No. 100, at p. 11.)  Plaintiffs support this proposition by pointing out that the regulations that apply to the temporary directional signs that Plaintiffs use to direct people to their worship services are regulated differently than political, ideological, and HOA signs.  Again, ideological signs and signs posted by HOAs may be posted only on private property.  The same is true of an "A-frame" sign, which may be posted within the right-of-way, but only in that portion of the right-of-way immediately adjacent to the property – essentially making it an on-site sign.  Plaintiffs do not own property, or even conduct their worship services, anywhere in the Town of Gilbert.

When apples are compared to apples under the Code, Plaintiffs' temporary directional signs are in fact treated identically to the temporary directional signs posted by any other non-profit group.  The Town's temporary directional sign ordinance allows non-profit organizations to display, without a permit, temporary signs to provide passersby with directions to a qualifying event – a benefit not afforded to commercial businesses.  The ordinance applies to any type of non-profit organization (be it religious, charitable, community service, or educational) and to any type of event, assembly, gathering, activity, or meeting that is sponsored, arranged, or promoted by such an organization.  In other words, the same regulation applies to Plaintiffs' church services, a YMCA soccer tournament, a Girl Scouts bake sale, a March of Dimes 10K run, or a school's carnival.  It also applies the same to Plaintiffs' non-religious events (like a car wash) as it does to their religious events. (DCSOF at ¶ 47-48.)[8]  Plaintiffs' status as a non-profit organization is what qualifies them to benefit from amended § 4.402(P).

As set forth in Defendants' Cross-Motion for Summary Judgment, a law is neutral and of general application if it does not aim to infringe upon or restrict practices because of their

---

[8] For these same reasons, the sign regulations do not violate the Equal Protection Clause, as Plaintiffs argue.  (*See* Dkt. No. 100, at p. 17.)

- 11 -

religious motivation and does not selectively impose burdens only on conduct motivated by religious belief. (*See* Dkt. No. 97, at pp. 14-15.) The Town's amended sign ordinance is neutral and generally applicable. The amended ordinance applies uniformly throughout the entire Town, does not apply varying treatment on the basis of religion, and the Town may further its interests in community aesthetics and traffic safety by regulating the posting of temporary, directional signs.

Strict scrutiny does not apply to such a law, and the Court should reject Plaintiffs' attempts to bootstrap their Free Exercise claim by arguing that this is a "hybrid situation." (*See* Dkt. No. 100, at p. 11.) Courts have widely criticized the so-called "hybrid rights doctrine" under which a "free exercise plaintiff must make out a colorable claim that a companion right has been violated" for strict scrutiny to apply. *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1124 (9th Cir. 2002); *see also Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999) (discussing "stringent predicates" for hybrid-rights claims). A plaintiff in such instances must do more than "merely combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right . . . ." *Miller*, 176 F.3d at 1208; *see also Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008) ("The hybrid rights doctrine has been widely criticized . . . no court has ever allowed a plaintiff to bootstrap a free exercise claim in this manner. We decline to be the first.") (internal citations and quotations omitted).

As set forth at length in Defendants' Cross-Motion for Summary Judgment, the Town's sign regulations are neutral, generally applicable, and rationally related to a legitimate governmental purpose, and any burden that the ordinance imposes on Plaintiffs' religious practice is incidental. (*See* Dkt. No. 97, at pp. 14-17.) The Court should enter summary judgment in favor of the Town on Plaintiffs' Free Exercise and AzRFRA claims.

IV. **CONCLUSION**

For the foregoing reasons, Defendants Town of Gilbert and Adam Adams respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment and enter summary judgment against Plaintiffs on all claims in Plaintiffs' Amended Verified Complaint.

RESPECTFULLY SUBMITTED this 1st day of October, 2010.

**GRASSO LAW FIRM P.C.**

By   s/ Kim S. Alvarado
Robert Grasso, Jr.
Kim S. Alvarado
Jenny J. Winkler
2430 W. Ray Rd., Suite 3
Chandler, AZ  85224
Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and by mail on the following who are not registered participants of the CM/ECF System:

Benjamin W. Bull, Esq.
Jeremy D. Tedesco, Esq.
**ALLIANCE DEFENSE FUND**
15333 North Pima Road, Suite 165
Scottsdale, Arizona  85260
*jtedesco@telladf.org*
   Attorneys for Plaintiffs

David A. Cortman
**ALLIANCE DEFENSE FUND**
1000 Hurricane Shoals Road, Suite D-600
Lawrenceville, Georgia 30043
*dcortman@telladf.org*
   Attorneys for Plaintiffs


By  s/M.Halligan