BENJAMIN W. BULL
AZ Bar No. 009940
JEREMY D. TEDESCO
AZ Bar No. 023497
ALLIANCE DEFENSE FUND
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020; (480) 444-0028 facsimile
jtedesco@telladf.org

DAVID A. CORTMAN
GA Bar No. 188810
ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Rd., NE
Building D, Suite 600
Lawrenceville, GA 30043
(770) 339-0774; (770) 339-6744 facsimile
dcortman@telladf.org

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| Pastor Clyde Reed; and Good News Community Church, <br><br> Plaintiffs, <br><br> v. <br><br> Town of Gilbert, Arizona; and Adam Adams in his official capacity as Code Compliance Manager, <br><br> Defendants. | Case No. 2:07-cv-00522-SRB <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Table of Authorities..............................................................................................................ii

Introduction .................................................................................................................... 1

I.   PREVIOUS DECISIONS AT THE PRELIMINARY INJUNCTION STAGE
     ARE NOT LAW OF THE CASE. ........................................................................... 3

II.  THE SIGN CODE IS UNCONSTITUTIONALLY CONTENT-BASED,
     WHICH ENDS THE ANALYSIS. .......................................................................... 3

     A.   Defendants effectively concede content based discrimination between
          political and the Church's speech – which are equally protected by the
          First Amendment............................................................................................ 4

     B.   Defendants' Content-Based Discrimination Fails Even Under Forum
          Analysis, Which Generally Does Not Apply To Sign Ordinances. .............. 6

          1.   The areas along public streets and sidewalks are traditional
               public fora. .......................................................................................... 7

          2.   The Sign Code Is Content-Based. ....................................................... 9

          3.   The Sign Code does not survive strict scrutiny................................. 10

     C.   Defendants Fail to Address Plaintiffs' Vagueness and Overbreadth
          Claims........................................................................................................... 10

III. DEFENDANTS APPLY THE WRONG LEGAL STANDARDS TO
     PLAINTIFFS' FREE EXERCISE AND FERA CLAIMS. ................................. 10

     A.   The Sign Code is Not Generally Applicable Just Because All Non-
          profits Are Treated the Same. ...................................................................... 11

     B.   Substantial Burden Under FERA is Determined Through the
          Perspective of the Church, Not the Town. ................................................... 12

     C.   Strict Scrutiny is Warranted Under the Free Exercise Clause and FERA. . 13

IV.  DEFENDANTS MAKE NO REAL ATTEMPT TO ADDRESS THE
     CHURCH'S EQUAL PROTECTION CLAIM. .................................................. 14

CONCLUSION .............................................................................................................. 14

CERTIFICATE OF SERVICE........................................................................................ 15

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3  *A.A. v. Needville Indep. Sch. Dist* 611 F.3d 248 (5th Cir. 2010)........................................ 13

4  *Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976) ........................................ 4, 5, 6, 7

5  *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2001) ....................................................... 14

6  *Berger v. City of Seattle,* 569 F.3d 1029 (9th Cir. 2009) ...................................................... 7

7  *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004) ........................................ 11

8  *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) ....................... 5

9  *Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009) ..................... 4

10  *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995) ..................... 2, 5

11  *Cheema v. Thompson*, 67 F.3d 883 (9th Cir.1995) ................................................... 12

12  *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)........................... 13

13  *Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727
14     (1996) ......................................................................................................... 8

15  *Draper v. Logan County Public* Library, 403 F.Supp.2d 608 (W.D. Ky. 2005) .............. 11

16  *Employment Div., Dept. of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990) ............... 12

17  *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006) .......................... 3

18  *Hague v. CIO*, 307 U.S. 496 (1939)...................................................................... 8

19  *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001) ......................................... 7, 9, 10

20  *Lehman v. Shaker Heights*, 418 U.S. 298 (1974) .................................................... 8

21  *Messer v. City of Douglasville*, 975 F.2d 1505 (11th Cir. 1992) ................................. 3

22  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) .................................... 3

23  *National Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988)........................ 3

24  *Perry Educ. Assn v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983)...................... 7, 8

25  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v.*
26     *U.S. Dep't of Agric.*, 499 F.3d 1108 (9th Cir. 2007)..................................... 3

27  *Reed v. Town of Gilbert*, 587 F.3d 966 (9th Cir. 2009)......................................... 1

28  *Schenck vs. Pro-Choice Network*, 519 U.S. 357 (1997) ...................................... 8

*State v. Hardesty*, 214 P.3d 1004 (Ariz. 2009)...................................................... 12

*Tenafly Eruv. Assoc., Inc. v. Borough of Tenafly,* 309 F.3d 144 (3d Cir. 2002).............. 11

*United States v. Grace*, 461 U.S. 171 (1983) ....................................................... 7

*Warren v. Fairfax County*, 196 F.3d 186 (4th Cir. 1999) .................................... 8

**Statutes**

Ariz. Rev. Stat. Ann. § 41-1493.01 (2004) ................................................. 2, 14

**Rules**

LRCiv 7.1(d)(1)............................................................................................ 1

Tex. Civ. Prac. & Rem. Code § 110.003 ...................................................... 13

iii

### Introduction

This case is about equal treatment, not special rights.  Pastor Clyde Reed and Good News Community Church ("Church") are merely seeking the same communication opportunities that political and other speakers get – not some sort of privileged status that will allow it "free" advertising at the Defendants' expense.[1]

The Defendants, the Town of Gilbert and Adam Adams ("Town"), concede that they treat the Church's speech less favorably than political speech.  Defendants' Cross-Motion for Summary Judgment ("Def. SJ Brf.") at 8 ("the key distinction between …political signs and directional signs is access to the public right of way"),[2] 9 (only signs allowed in "public right of way are: (1) political signs . . . and (2) A-frame signs").[3] Under all the sign cases cited by both parties, this is unconstitutional content based discrimination and ends the debate.  And this is exactly the type of discrimination between noncommercial speakers the Ninth Circuit directed this Court to look for.  *Reed v. Town of Gilbert*, 587 F.3d 966, 983 (9th Cir. 2009).

Defendants attempt to excuse this discrimination by utilizing forum analysis, which is generally not used in the sign code context.  Defendants cite only one sign case that mentions forums and it struck down a sign code because it made content based distinctions in traditional public forums along streets and sidewalks almost identical to those at issue here.  So even if forum analysis is applied here, the discrimination against

---

[1] Defendants repeatedly raise the red herring that Plaintiffs are seeking "free advertising." Plaintiffs merely seek equal treatment regardless of its form.

[2] While Defendants rightly concede the difference in right of way access, they fail to mention additional differences in sign size, duration, etc.  *See* Plaintiffs' Motion for Summary Judgment and Memorandum of Law In Support Thereof at 5-6 ("Plaint. SJ Brf.").  Many of the arguments in Plaint. SJ Brf. are applicable here.  Instead of restating them in full, Plaintiffs incorporate them by reference as instructed by LRCiv 7.1(d)(1).

[3] Defendants also drop a footnote admitting that weekend directional signs for builders are also allowed in the right of way with an [inexpensive, rubber-stamped] permit, which Plaintiffs would gladly accept as an alternative to what they now receive (assuming political signs would be similarly treated).

the Church's signs by Article 4.4 of Defendants' Ordinances ("Sign Code")[4] is unconstitutional.

Contrary to the Town's implication, religious speech is just as protected as political speech.  In fact, it enjoys more protection because it is protected by the Free Exercise Clause – not just the Free Speech Clause of the First Amendment.  *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 767 (1995) (in addition to protection under the Free Speech Clause, "private religious expression receives preferential treatment under the Free Exercise Clause").  And the Town's Free Exercise arguments fair no better than its flawed free speech analysis.  The Sign Code is not generally applicable because it does not treat all non-profit speech the same.  It allows political, ideological, and homeowner association signs much more freedom in displaying signs.  *See* Plaint. SJ Brf at 5-6.  The Town's assertion that political signs are only permitted in the four months prior to an election is simply wrong.  It places absolutely no limitation on the number of months before an election a political sign may be displayed. *See* Sign Code at § 4.402P.1-5.  Moreover, the Sign Code is not generally applicable because the Town does not treat the Church's signs the same as those of for-profits. Plaint. SJ Brf. at 7.  The Sign Code also substantially burdens religion, as determined from the Church's perspective, which is the proper standard to use under Arizona's Free Exercise of Religion Act, Ariz. Rev. Stat. Ann. § 41-1493.01 (2004) ("FERA").

Finally, the Town does not substantively address the Church's claim that it has been denied equal protection based on a fundamental right.  Therefore, strict scrutiny must be applied to the Sign Code, and Defendants' interests in aesthetics cannot clear this high bar.  The Town's motion for summary judgment must be denied.

---

[4] All applicable sections of the Sign Code are attached to the parties' Joint Stipulated Statement of Facts ("JSSF") as Ex. A.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   PREVIOUS DECISIONS AT THE PRELIMINARY INJUNCTION STAGE ARE NOT LAW OF THE CASE.

It is well-settled that decisions at the preliminary injunction stage are generally not law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007). The only exception is for decisions on pure issues of law. *Id.* But all of the key issues previously addressed by this Court and the Ninth Circuit involved fact-intensive inquiries. The law of the case doctrine does not apply. This Court has not yet made a final decision on the merits regarding any of the Church's claims. And, the main issue presented here, whether the Code discriminates between types of non-commercial speech, has yet to be ruled on at all.

## II.   THE SIGN CODE IS UNCONSTITUTIONALLY CONTENT-BASED, WHICH ENDS THE ANALYSIS.

The Town misuses forum analysis in an attempt to excuse its content based discrimination.  But it fails to cite a single case where a court used forum analysis to uphold a sign code.  For instance, the Town cites *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), which struck down an ordinance allowing some forms of noncommercial advertising on billboards, but not others based on content.  The Supreme Court did not use forum analysis, and actually distinguished cases involving nonpublic forums, stating those "cases turned on unique fact situations involving government-created forums and have no application here."  *Id.* at 514 n.19.  *See also National Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988) (striking down sign code that discriminated between noncommercial speech based on content, but not using forum analysis to do so); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006) (not using forum analysis when upholding a sign code because it was content neutral); *Messer v. City of Douglasville*, 975 F.2d 1505 (11th Cir. 1992) (same).

Generally, forum analysis only applies to government owned land.  But sign ordinances, like the Sign Code here, usually address signs on both private and government land.  Therefore, forum analysis is not appropriate.  Under the most recent

3

cases, if a court determines a sign ordinance is content based – as is the one in this case – it is unconstitutional and forum analysis is irrelevant.

The only case cited by Defendants that is an exception to the general inapplicability of forum analysis to sign codes was decided prior to *Metromedia*. In *Baldwin v. Redwood City*, 540 F.2d 1360, 1363 (9th Cir. 1976), the Ninth Circuit struck down a sign code that – like the Town's ordinance in this case – included a limitation on the number of signs for a particular political candidate as impermissible content based discrimination because "it rests upon the message conveyed by the posters." *Id.* at 1379. So even under Defendants' analysis and authority, the Sign Code is unconstitutional.

> **A.    Defendants effectively concede content based discrimination between political and the Church's speech – which are equally protected by the First Amendment.**

Understandably, the Town makes no effort to argue that its discriminatory treatment of the Church's speech as compared to political speech is not content based. It concedes that political, A-frame, and homebuilder's signs are permitted in the public rights-of-way, but the Church's are not. Def. SJ Brf. at 9-11. Instead it argues that political speech is entitled to preferential treatment as "core speech concerning the functioning of democratic government." *Id.* But none of the cases cited by Defendants hold that political speech is more protected than religious speech. Quite to the contrary, religious speech is also fundamental to the functioning of our government.

> An unregulated, unregistered press is important to our democracy. So are unregulated unregistered churches. Churches have played an important-no, an essential-part in the democratic life of the United States. On two of the greatest issues ever to confront our country, churches led the way and churchmen conducted crusades [– the abolition of slavery, and the 1960s civil rights movement]. …In a secular age, Freedom of Speech is more talismanic than Freedom of Religion. But the latter is the first freedom in our Bill of Rights.

*Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021, 1036-37 (9th Cir. 2009) (Noonan, concurring). Religious speech does not take a back seat to political speech on the constitutional bus.

4

1

2

3          Defendants violate this rule and relegate religious speakers to second class status

4   as compared to political speakers as demonstrated by the testimony of three Town

5   employees responsible for interpreting or enforcing the Sign Code.  Karen Coats, Michael

6   Milillo, and Steve Wallace all said that a sign with both religious and political speech on

7   it would be classified as "religious" and not given the same liberal access to rights-of-

8   way as political speech.  Karen Coats Dep. at 36-35 (Ex. 2)[5]; Michael Milillo Dep. at 28-

9   29 (Ex. 1); Steve Wallace Dep. at 31-33 (Ex. 4).   This devaluation of religious speech is

10  not tolerated by the First Amendment.  As famously noted by the Supreme Court, "Our

11  precedent establishes that private religious speech, far from being a First Amendment

12  orphan, is as fully protected under the Free Speech Clause as secular private expression.

13  Indeed, in Anglo-American history, at least, government suppression of speech has so

14  commonly been directed precisely at religious speech that a free-speech clause without

15  religion would be Hamlet without the prince."  *Capitol Square Review & Advisory Bd. v.*

16  *Pinette*, 515 U.S. at 760 (citations omitted).

17          The Town also contends that its content based discrimination is somehow justified

18  because the Sign Code "does not effect [sic] a total ban on off-site noncommercial

19  advertising…."  Def. SJ Brf. at 8.  Once again, Defendants' argument is contradicted by

20  their own authority in *Baldwin*, which observed:  "Redwood City officials argue that only

21  total prohibition, as distinguished from regulation, of a mode of expression offends the

22  First Amendment. The distinction is artificial. In a sense, '(a)ll regulatory legislation is

23  prohibitory.'  *Breard v. Alexandria*, 341 U.S. 622, 631, 71 S.Ct. 920, 95 L.Ed. 1233

24  (1951).  The question is whether, on balance, a regulation of either kind unduly restricts

25  First Amendment rights."  *Baldwin*, 540 F.2d at 1370 n.28.

26          Defendants' last ditch argument to save their content based discrimination is that

27  political signs are only permitted "during election periods."  Def. SJ Brf. at 11.  But there

28  is no such prohibition.  The Sign Code only restricts how long after an election a sign

---

[5] All depositions are attached to Plaint. SJ Brf.

may be up.  It sets no limit on the number of days before an election a political sign can be displayed.  *See* § 4.402I.

Finally, the Town cannot even satisfy the appropriate legal standard under a content neutral analysis.  It contends that it has met the requirement of leaving open ample alternative avenues of communication because "Plaintiffs have virtually unlimited ways to invite the community to attend their church services."  Def. SJ Brf. at 13.  First, political organizations also have unlimited ways to reach potential voters; but they have virtually unlimited access to Defendants' rights-of-way.  Moreover, Pastor Reed has testified that signs temporarily displayed in public rights of way are uniquely effective in directing people to Church services.  Reed Dep. at 47 (Ex. 6).  The Ninth Circuit agrees with Pastor Reed that this type of advertising is unique.  "[T]he First Amendment interests involved in the display of political posters adjacent to public thoroughfares are substantial. Moreover, means of political communication are not entirely fungible; political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among voters in a local election."  *Baldwin*, 540 F.2d at 1368.  The same is equally true for religious signs.

The Defendants' clear content-based discrimination ends the analysis.  Plaintiff must prevail.

## B.  Defendants' Content-Based Discrimination Fails Even Under Forum Analysis, Which Generally Does Not Apply To Sign Ordinances.

Even if the Ninth Circuit's 1976 determination in *Baldwin* that forum analysis should be applied to sign codes is still applicable (even though such analysis has not been applied in many more recent cases), it held that content based discrimination between signs displayed along public roads is unconstitutional because they are in a traditional public forum.  "Posters and signs are erected adjacent to traditional first amendment forums, such as public sidewalks and other thoroughfares, where expressive activity may be restricted only for weighty reasons.  …The regulations thus directly infringe the First Amendment rights of individuals who want to express political opinion ***in a traditional***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*First Amendment forum*.” *Baldwin*, 540 F.2d at 1366 (emphasis added, citations and quotation marks omitted).  The court made this determination even though the ordinance only affected private property.  *Id.* at 1366 n.12.  Defendants' own authority, not to mention the analysis below, contradicts their assertion that areas along public streets and sidewalks are not traditional public fora.

> **1.     The areas along public streets and sidewalks are traditional public fora.**

As set forth in *Hopper v. City of Pasco*, 241 F.3d 1067, 1074-75 (9th Cir. 2001), the Ninth Circuit generally recognizes four types of fora:

a.  Traditional public forum – “those places [such as streets and sidewalks] which by long tradition or by government fiat have been devoted to assembly and debate,” and where strict scrutiny applies to content based speech restrictions. *Id.* at 1074 n.5 (citations and quotation marks omitted).

b.  Designated public forum – where “the government intentionally opens up a nontraditional forum for public discourse” by policy or practice, to which the same strict scrutiny as in traditional public fora applies.  *Id.* at 1074.

c.  Limited public forum – “forum that the government has intentionally opened to certain groups or to certain topics … [where] restrictions that are viewpoint neutral and reasonable in light of the purpose served by the forum are permissible.”  *Id.* at 1074-75 (citations and quotation marks omitted).

d.  Nonpublic forum – “place that does not, by tradition or designation, serve as a forum for public communication; thus, content-based restrictions in nonpublic fora need only be reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.”  *Berger v. City of Seattle,* 569 F.3d 1029*,* 1089 (9th Cir. 2009) (Smith, concurring in part, dissenting in part) (citations and quotation marks omitted).

Public streets and sidewalks are indisputably traditional public fora,  *Perry Educ. Assn v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983); *United States v. Grace*, 461 U.S. 171, 177 (1983) (holding that the sidewalks adjacent to the Supreme Court were

a public forum), and have been characterized by the Supreme Court as "prototypical" examples of traditional public fora, *Schenck vs. Pro-Choice Network*, 519 U.S. 357, 377 (1997). "[T]ime out of mind," such locations "have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939).

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public and time out of mind have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. In these quintessential public forums the government may not prohibit all communicative activity.

*Perry*, 460 U.S. at 45.

Traditional public fora include public rights-of-way along public sidewalks and roads like the ones the Church wants equal access to here. For instance, the Fourth Circuit found that a 30' wide grassy area surrounded by a sidewalk, which ran along a road leading to a government building was a traditional public forum in *Warren v. Fairfax County*, 196 F.3d 186, 196-197 (4th Cir. 1999). Among the reasons the court found significant for this designation was that it was "a combination of the three prototypical examples of traditional public fora - streets, sidewalks, and parks." *Id.* at 190.

Public easements and rights-of-way are appropriately treated as public forums because of the government's underlying property interest. *See Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 828 (1996) (Kennedy, J., concurring in part, and dissenting in part) (*citing Hague,* 307 U.S. at 515). They fit nicely within the public areas the Supreme Court has carefully preserved access to for free speech: open spaces, parks, street corners, and other public thoroughfares. *Lehman v. Shaker Heights*, 418 U.S. 298, 302-03 (1974). In the rights-of-way at issue in this case, there is absolutely no prohibition on non-sign types

of expression such as picketing, marching, open air preaching, and sit-ins.  They are clearly traditional public fora.

At a minimum, the Town has designated the areas along sidewalks and roads as open for public discourse through policy and practice.  A wide variety of speech is allowed in these areas, including virtually unlimited political signs, ideological signs, signs carried by walkers, as well as signs advertising businesses, subdivision open houses, and homeowner's association meetings.  *See* §§ 4.402I (political signs), 4.402J (ideological signs), § 4.402W (walkers), 4.406C(3) (HOA signs); 4.402N (business A-Frame signs); 4.405(B)(2) (real estate developers).  The public nature of this forum is also demonstrated by the pictures depicting numerous signs in the public rights-of-way attached to the Affidavit of Pastor Clyde Reed in Support of Summary Judgment ("Reed SJ Aff.").

The public rights-of-way along the Town's roads are certainly not limited public fora that are restricted to certain groups or certain topics.  Anyone can speak there at any time, with virtually no restrictions other than for (some) unattended signs.  The Town fails to cite a single case that characterizes public rights-of-way along streets and sidewalks as limited public fora.

So whether characterized as a traditional or designated public forum, content based restrictions on speech in the rights-of-way along the Town's roads must undergo strict scrutiny.  *Hopper*, 241 F.3d at 1074-75.[6]

## 2.    The Sign Code Is Content-Based.

As discussed at length *supra*, and in Plaintiff's summary judgment memorandum of law, Defendants' Code is content-based, a fact which they effectively concede in their

---

[6] Defendants also claim that they have not engaged in viewpoint discrimination.  Def. SJ Brf. at 11.  In addition to the fact that they apply the wrong standard, as explained above, they admit viewpoint discrimination: "stated another way these [permitted political signs] are campaign signs relating to a public event."  *Id.* at 10.  Allowing signs for political events but not religious events smacks of viewpoint discrimination.

response brief.  Such discrimination is prohibited in traditional and designated public fora.

### 3.      The Sign Code does not survive strict scrutiny.

The Sign Code's discrimination based on content is presumptively unconstitutional, subject to strict scrutiny, and will only be upheld if narrowly drawn to serve a compelling state interest.  Order at 8-9 (Doc. 43); *Hopper,* 241 F.3d at 1074 n.5 (strict scrutiny applies to content based discrimination in traditional and designated public fora).  Defendants make no attempt to meet this standard, nor can they.  *See* Plaint. SJ Brf. at 8 & 16.  Defendants have not carried their burden of showing they are entitled to judgment as a matter of law on Plaintiffs' free speech claim.

### C.      Defendants Fail to Address Plaintiffs' Vagueness and Overbreadth Claims.

The Town does not address Plaintiffs' vagueness and overbreadth claims. Therefore, it cannot be awarded summary judgment on "all claims" as it has requested. This Court should award Plaintiffs summary judgment on these claims, as requested at 9 of Plaint. SJ Brf.

## III.   DEFENDANTS APPLY THE WRONG LEGAL STANDARDS TO PLAINTIFFS' FREE EXERCISE AND FERA CLAIMS.

The Town wrongly argues that the Free Exercise requirement of neutrality and general applicability is met so long as the Sign Code treats all non-profits the same.  But the Sign Code does not even satisfy this defective standard because the Town admittedly gives preferential treatment to non-profit signs that are political.

And the Town effectively concedes the Church meets all the requirements for a FERA claim except substantial burden, as that is the only factor it addresses.   Its substantial burden argument fails because it does not assess the burden from the perspective of the Church.  The Town does not demonstrate it is entitled to judgment as a matter of law on Plaintiffs' free exercise claims.

**A.    The Sign Code is Not Generally Applicable Just Because All Non-profits Are Treated the Same.**

Defendants misstate the Free Exercise Clause's requirement of neutrality and general applicability as being satisfied by a law which "does not selectively impose burdens only on conduct motivated by religious belief."  Def. SJ Brf. at 14.  Such a reading of the rule makes it completely ineffective because a governmental entity could discriminate based on religion by merely adding a few non-religious groups to the religious folks being disfavored (which is what the Town did in this case when it amended its ordinance).  *See* Plaint. SJ Brf. at 13.

This is not the law.  In *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004), the Third Circuit determined that a wildlife conservation inspired prohibition on keeping black bears without a license that did not apply to zoos and circuses was not generally applicable.  The prohibition was not limited to the plaintiff's keeping of wildlife for religious reasons.  It also applied to those who kept wildlife for non-religious purposes such as for pets, or out of a personal concern for the environment, yet was still not generally applicable.  *Id.* at 211.

Similarly, in *Tenafly Eruv. Assoc., Inc. v. Borough of Tenafly*, the court applied strict scrutiny to regulations prohibiting Orthodox Jews from attaching *lechis* for Sabbath observance to utility poles, 309 F.3d 144, 169-70 (3d Cir. 2002).  Borough officials prohibited other items besides *lechis*, but did not enforce the regulation against house numbers, directional signs, ribbons supporting the school, and lost animal signs. *Id.* at 151.  The court determined government officials "contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct."  *Id.* at 166.  *See also Draper v. Logan County Public* Library, 403 F. Supp. 2d 608, 621 (W.D. Ky. 2005) (public library's dress code was not neutral and generally applicable even though political and offensive speech were included in its rule restricting religious speech).

The Sign Code is not generally applicable because it applies different standards to different types of speech, as demonstrated fully above.  Defendants' amendment of the

Sign Code to include a few more non-profits in its provisions that discriminate against the Church's speech does not make it neutral and generally applicable – especially since political non-profit speech is still favorably treated.

**B.      Substantial Burden Under FERA is Determined Through the Perspective of the Church, Not the Town.**

Under FERA, the burden of proof shifts to the Government after three elements have been shown: "(1) that an action or refusal to act is motivated by a religious belief, (2) that the religious belief is sincerely held, and (3) that the governmental action substantially burdens the exercise of religious beliefs." *State v. Hardesty*, 214 P.3d 1004, 1007 (Ariz. 2009).   Because the FERA is new, the Arizona Supreme Court looks to numerous Supreme Court and Circuit Court cases decided prior to the ruling in *Smith* when interpreting it.  *Id*.

The Town does not address the first two factors, but rests its entire argument on a flawed substantial burden analysis.  It substitutes its own view of the Church's religious beliefs for that of the Church, and then smugly concludes that its restrictions on the Church's signs place absolutely *no* burden on the Church's religious freedom, and that there is no substantial burden *as a matter of law*.  Def. SJ Brf. at 17-18.

First, the Town's determination that display of signs advertising worship services is not very important to the Church's religious beliefs runs afoul of the Supreme Court's prohibition on government authorities even undertaking such an analysis.  "Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim."  *Employment Div., Dept. of Human Res. of Or. v. Smith*, 494 U.S. 872, 887 (1990).

Secondly, the Town's analysis is contrary to the rule that substantial burden must be assessed from the perspective of the religious group or individual affected – not the government.  For instance, the Ninth Circuit found in *Cheema v. Thompson*, 67 F.3d 883 (9th Cir.1995) (a RFRA case), that a school's prohibition on Sikh Muslim children bringing ceremonial knives to school substantially burdened the students' religious

freedom.  Since most government officials in this country are not Sikh Muslim, this determination was clearly made from the perspective of the student.

The Fifth Circuit, citing *Cheema*, recently applied this rule in determining that a school's requirement that a Native American student either cut his hair, or wear it in a bun substantially burdened the student's religious freedom.  It observed in *A.A. v. Needville Indep. Sch. Dist.,* 611 F.3d 248, 264 (5th Cir. 2010) when interpreting the Texas Religious Freedom Restoration Act, Tex. Civ. Prac. & Rem. Code § 110.003, (the operative language of which is virtually identical to FERA): "The focus of the inquiry is on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression, as measured from the person's perspective, not from the governments." (citations, quotation and editing marks omitted).

It is undisputed that the Church's display of directional signs is motivated by the religious belief of fulfilling the Great Commission.  Amended Verified Complaint at ¶¶ 43-49.  The Church is not large and its directional signage is a primary method of communicating with the community.  *Id.* at ¶¶ 47-49.  In testimony elicited by opposing counsel, Pastor Reed testified that the Church's highest attendance was 38 when it could display its signs on equal terms with other similar signs and it is only about 30 now – a 21% reduction.  Reed Dep. at 12 (Ex. 6).  Pastor Reed also testified that directional signage is the most effective way the Church has of letting people know about its services.  *Id.* at 47.  The Sign Code's adverse affect on the Church is substantial.

**C.  Strict Scrutiny is Warranted Under the Free Exercise Clause and FERA.**

The Free Exercise Clause and FERA both mandate strict scrutiny in this case.  "A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests."  *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993) (citation and quotation marks omitted).  Under FERA, the "Government may substantially burden a person's exercise of religion ***only if*** it

13

demonstrates that application of the burden to the person is both: 1. In furtherance of a compelling governmental interest; [and] 2. The least restrictive means of furthering that compelling governmental interest." A.R.S. § 41-1493.01(C) (emphasis added). Defendants have failed to articulate any compelling interest, much less a narrowly tailored one, so the Sign Code violates the Church's free exercise rights. *See* Plaint. SJ Brf. at 8 & 16.[7]

## IV.   DEFENDANTS MAKE NO REAL ATTEMPT TO ADDRESS THE CHURCH'S EQUAL PROTECTION CLAIM.

The Town does not even address the Church's claim that the Sign Code's favoritism for certain types of speech on temporary signs makes distinctions based on a fundamental right, and therefore must be subjected to strict scrutiny. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). Instead it generally asserts that it has an "appropriate governmental interest" and does not attempt to show it has a compelling interest, which is required because the Town discriminates on the basis of speech and religion, as shown above. Def. SJ Brf. at 13. The Town has not carried its burden of demonstrating it is entitled to summary judgment on the Equal Protection claim.

## CONCLUSION

Defendants' admitted content based discrimination between political signs and those of the Church damns its Sign Code whether it is evaluated under the most recent sign code cases, or forum analysis. Content based discrimination is prohibited absent a narrowly tailored compelling interest and Defendants do not even attempt to articulate such an interest, nor could they. Their free exercise arguments also fail because they misconstrue and misapply the neutrality, general applicability, and substantial burden tests. Finally, Defendants do not even address Plaintiffs' vagueness and overbreadth claims, and only summarily analyze the equal protection claim. Their motion for summary judgment must be denied.

---

[7] Defendants cite several government interests in support of their ordinance. Def. SJ Brf. at 12. In addition to the fact that none of them are "compelling," they also are not furthered by the Ordinance. *See* Plaint. SJ Brf. at 8-9, 12-13.

14

Respectfully submitted this 1st day of October, 2010.

s/Jeremy D. Tedesco
Benjamin W. Bull                      David A. Cortman*
AZ Bar No. 009940                     GA Bar No. 188810
bbull@telladf.org                     dcortman@telladf.org
Jeremy D. Tedesco                     Alliance Defense Fund
AZ Bar No. 023497                     1000 Hurricane Shoals Rd., NE
jtedesco@telladf.org                  Building D, Suite 600
Alliance Defense Fund                 Lawrenceville, GA 30043
15100 N. 90th Street                  (770) 339-0774
Scottsdale, AZ 85260                  (770) 339-6744 facsimile
(480) 444-0020
(480) 444-0028 facsimile
                                      *Admitted pro hac vice

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2010, I electronically filed the foregoing paper with the Clerk of Court using the ECF system which will send notification of such filing to the following:

  Kim S. Alvarado
  Grasso Law Firm, P.C.
  2430 West Ray Road, Suite 3
  Chandler, AZ 85224

*Attorney for Defendants*

                              s/Jeremy D. Tedesco
                              JEREMY D. TEDESCO
                              AZ Bar No. 023497
                              ALLIANCE DEFENSE FUND
                              15100 N. 90th Street
                              Scottsdale, AZ 85260
                              (480) 444-0020; (480) 444-0028 facsimile
                              jtedesco@telladf.org