Robert Grasso, Jr. – Bar No. 015087
Kim S. Alvarado – Bar No. 018216
Jenny J. Winkler – Bar No. 019032
**GRASSO LAW FIRM, P.C.**
2430 W. Ray Rd., Suite 3
Chandler, Arizona 85224
Telephone (480) 730-5553
Facsimile (480) 730-2810
*rgrasso@grassolawfirm.com*
*kalvarado@grassolawfirm.com*
*jwinkler@grassolawfirm.com*
   Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PASTOR CLYDE REED; AND GOOD NEWS PRESBYTERIAN CHURCH,<br><br>         Plaintiffs,<br><br>vs.<br><br>TOWN OF GILBERT, Arizona; and ADAM ADAMS in his official capacity as Code Compliance Manager,<br><br>         Defendants. | CV 07-0522 PHX-SRB<br><br>**REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Defendants Town of Gilbert, Arizona (the "Town") and Adam Adams, in his official capacity as the Town's Code Compliance Administrator (collectively, "Defendants"), submit the following Reply in Support of Defendants' Cross-Motion for Summary Judgment. (Dkt. No. 97.)

Concerning Plaintiffs' claims that the Town's amended ordinance violates the Free Speech Clause of the First Amendment, the Ninth Circuit identified the remaining legal issue: whether the Town's amended ordinance "impermissibly evaluates the strength of or distinguishes between various noncommercial communicative interests." *Reed v. Town of Gilbert*, 587 F.3d 966, 982-83 (9th Cir. 2009). The Court should reject Plaintiffs' invitation to reconsider the Ninth Circuit's legal holdings when Plaintiffs have provided the Court with no new facts, evidence, or law to warrant a different result.

1  **I.      THE EXEMPTIONS DO NOT RENDER THE ORDINANCE CONTENT-BASED**

As the Ninth Circuit observed, under the amended ordinance "Ideological Signs, Political Signs, and Qualifying Event Signs are all exempted from the . . . permit requirement, and treated favorably . . . in that respect," but "each category faces different restrictions and requirements."  *Reed*, 587 F.3d at 983.  The question is whether, by regulating noncommercial signs in this manner, the ordinance impermissibly discriminates among certain forms of noncommercial speech.  *See id.*

Both sides agree that the primary distinction at issue here is access to the public right-of-way.  Among the various categories of noncommercial signs, only Political Signs are allowed within the right-of-way, only during an election period, and they must be set back fifteen feet from the edge of the curb or pavement.  (Sec. 4.402(I), Dkt. No. 99-2, at p. 5.)  Ideological Signs are allowed in all zoning districts, as are Temporary Directional Signs Relating to a Qualifying Event, but neither can be placed in the public right-of-way.  (Sec. 4.402(J), Dkt. No. 99-2, at p. 6; Sec. 4.402(P), *id.* at p. 9.)  Plaintiffs attempt to have it both ways by arguing (without citation to authority) that forum analysis "is generally not used in the sign code context," (Dkt. No. 106, at p. 1), while at the same time acknowledging that "forum analysis . . . applies to government owned land" (*id.*, at p. 3) and arguing that the Town's right-of-way is a public forum simply because it is publicly-owned land (*see id.*, at p. 3).

As Defendants acknowledge in their Cross-Motion, numerous courts have concluded that public streets and sidewalks as well as other publicly-owned property are public fora.  But no case has held that the mere fact that the public right-of-way is government-owned property or that it encompasses a sidewalk dictates that the right-of-way is a public forum for purposes of First Amendment analysis, as Plaintiffs argue.  To the contrary, the Supreme Court has instructed that "[t]he mere physical characteristics of the property cannot dictate forum analysis."  *United States v. Kokinda*, 497 U.S. 720, 726 (1990).  Forum analysis requires Courts to examine the location and purpose of the publicly owned property, as well

as the type of access sought. *See id.* at 728-29 ("As we recognized in *Grace*, the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum."); *Arizona Life Coalition, Inc. v. Stanton*, 515 F.3d 956, 968 (9th Cir. 2008) ("In defining the forum, we must focus on the access sought by the speaker. When speakers seek general access to public property, the forum encompasses that property. In cases in which limited access is sought, the Supreme Court's cases have taken a more tailored approach to ascertain the perimeters of the forum within the confines of the public property.") (internal quotations and alterations omitted).[1]

### A. The Town's Rights-of-Way Are Limited Public Fora.

The type of access that Plaintiffs are seeking here (leaving multiple, unattended, stationary objects for unlimited periods of time within the public thoroughfare) combined with the purpose of the public right-of-way (allowing passage to roadway users, setbacks for sight visibility, and area for public utilities) supports a finding in this case that the Town's

---

[1] Notably, none of the cases Plaintiffs cite involves the placement of unattended signs in a public right-of-way. *See Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001) (exclusion of artists' works from city hall); *United States v. Grace*, 461 U.S. 171, 175 (1983) (regulation prohibiting parading, standing, or moving in procession on public sidewalks surrounding the Supreme Court while displaying banners or flags "designed . . . to bring into public notice any party, organization or movement."); *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983) (provision of collective bargaining agreement granting exclusive access to teacher mailboxes and interschool mail system); *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997) (abortion protesters blocking access to family planning clinic); *Warren v. Fairfax County*, 196 F.3d 186 (4th Cir. 1999) (holiday display on outdoor mall); *Denver Area Educ. Telecomm. Consortium, Inc. v. FCC*, 518 U.S. 727 (1996) (programming on leased and public access cable channels); *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974) (advertising card space on city transit system). The one arguable exception is *Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976). There, the court addressed a regulation that imposed permit and fee requirements on temporary political signs and limited their quantity, size, and placement on both public and private property throughout the city. The court mentioned in dicta that the signs "are erected adjacent to 'traditional first amendment forums,' such as public sidewalks and other thoroughfares,'" *id.* at 1366, but it did not analyze either the specific public property involved or the type of access sought.

rights-of-way are limited public fora.  The placement of permanent, stationary, unmanned objects (with or without words printed on them) within the right-of-way is neither consistent with its purpose nor a recognized traditional use.  The Town has not opened up its rights-of-way to the placement of signs by anyone, on any topic, at any time.

The evidence is undisputed that the Town greatly curtails this type of access to the public rights-of-way.  The Town does not allow ideological signs to be displayed in Town rights-of-way. (Sec. 4.402(J), Dkt. No. 99-2, at p. 6.) Regarding A-frame signs, anyone with property within the designated zoning districts may place one (1) A-frame sign in the right-of-way immediately adjacent to their property but only during hours the property is open to the public.[2] (Sec. 4.402(N), *id*., at p. 7.)  So, for example, if Plaintiffs had a meeting place within a designated zoning district in the Town of Gilbert, they could place an A-frame sign in the right-of-way immediately adjacent to the property where they were meeting during the hours that their meeting was open to the public.  But Plaintiffs are meeting in the City of Chandler, not the Town of Gilbert, and do not have any property within the Town of Gilbert.  Therefore, the A-frame regulation has no relevance here.

The same is true of the Town's regulation of new residential subdivision weekend directional signs, which are limited in number and geographic scope, require a permit, and must meet numerous other requirements.  (Sec. 4.405(B), *id*., at pp. 23-26.)  Plaintiffs' argument that they would submit to permit requirements if they could have the same access to the right-of-way as the developer of a new subdivision makes little sense when you consider that new subdivision weekend directional signs may only be displayed within a two-mile radius of the residential subdivision and Plaintiffs' current meeting location is at least three miles from the closest Town of Gilbert right-of-way.  (See *id*., at p. 25; Dkt. No. 98, DSOF, ¶ 42.)

---

[2] In contrast, with a property owner's permission, Plaintiffs can place numerous A-frame signs twelve (12) hours *before*, during, and *after* their qualifying event. (Sec. 4.402(P), Dkt. No. 99-2, at p. 9.)

- 4 -

Finally, Plaintiffs already have conceded (despite the arguments set forth in their Response), that treating Plaintiffs' signs "the same" as political signs – allowing them to be posted in the right-of-way for a period of a few months every two years – is not the type of access that Plaintiffs are seeking. (Dkt. No. 98, DSOF, ¶ 56.)

Plaintiffs argue that, by allowing the placement of temporary political signs, new residential subdivision weekend directional signs (with a permit), and an on-site A-frame sign in the right-of-way, the Town has created a public forum that it must now throw open to anyone who wants to place a sign there. The cases are clearly inapposite. *See, e.g., Kokinda*, 497 U.S. at 730 ("allowing some speech activities on postal property do[es] not add up to the dedication of postal property to speech activities."); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("The government does not create a public forum by . . . permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse."); *Perry*, 460 U.S. at 47 ("selective access does not transform government property into a public forum"). There is no evidence here that the Town has opened the public rights-of-way to general public discourse in the form of unattended, stationary signs. The Town's rights-of-way are limited public fora for purposes of the type of access Plaintiffs are seeking here.

The Court should grant summary judgment in favor of the Town Defendants on Counts One and Two of Plaintiffs' Amended Verified Complaint.

    **B.**    **The Limitations on Access to the Town's Rights-of-Way Are Reasonable, Consistent, and Viewpoint-Neutral**.

The Court should reject Plaintiffs' argument that the Town's restriction of signs within the public rights-of-way is content-based and somehow "devalues" religious speech. (Dkt. No. 106, at p. 5.) Because the right-of-way is a limited public forum, a "lenient reasonableness standard" applies to determine the validity of the Town's regulations governing the placement of signs within its rights-of-way. *Cornelius*, 473 U.S. at 797. The touchstone of this "reasonableness" analysis is consistency and viewpoint neutrality. Simply

- 5 -

...

put, the Town may limit the access Plaintiffs seek here – the placement of unattended signs within the Town's rights-of-way – to certain speakers and certain topics, as long as it does so in a reasonably consistent, viewpoint-neutral manner. *See id.* at 803 ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.") (quoted in *Kokinda*, 497 U.S. at 730).

There is no evidence, or even real argument for that matter, that the Town's restriction of access to its rights-of-way is not viewpoint neutral.[3] And as set forth in detail in Defendants' Cross-Motion (Dkt. No. 97, at pp. 10-11) and in Defendants' Response to Plaintiffs' Motion for Summary Judgment (Dkt. No. 104, at pp. 7-9), the Town's limitations on access to its rights-of-way are consistent with preserving the right-of-way for its intended use while at the same time recognizing that at certain times – such as during a public election or during the weekend sale of new homes within Gilbert – more speech is demanded by the citizenry and can be provided consistent with the forum's intended purpose. *See G.K. Limited v. City of Lake Oswego*, 436 F.3d 1064, 1077-78 (9th Cir. 2006).

### C.  Plaintiffs' Vagueness and Overbreadth Claims Are Without Basis.

Defendants have addressed Plaintiffs' claims that the Town's sign regulations are impermissibly vague and overbroad in their Response to Plaintiffs' Motion for Summary Judgment. (Dkt. No. 104 at pp. 9-10.) Defendants incorporate, by reference, those arguments.

---

[3]  Plaintiffs' statement that "[a]llowing signs for political events but not religious events smacks of viewpoint discrimination" borders on nonsensical. (Dkt. No. 106, at p. 9, n.6.) Allowing signs for one political candidate but not for another would be viewpoint discrimination. Allowing only secular groups to post political signs would be viewpoint discrimination. But allowing the placement of campaign signs on public property during an election season, while prohibiting the placement of other types of signs in the public right-of-way, is not viewpoint discrimination. It is a reasonable, consistent, viewpoint-neutral regulation of access to a limited public forum. *See G.K. Ltd.*, 436 F.3d at 1076.

- 6 -

**II.     THE TOWN'S SIGN REGULATIONS ARE NEUTRAL AND GENERALLY APPLICABLE**

Defendants are entitled to judgment as a matter of law on Plaintiffs' claim under the Free Exercise Clause of the First Amendment (Count Three).  In the cases from other jurisdictions cited by Plaintiff, those courts considered regulations that either expressly singled out religiously-motivated conduct or burdened such conduct, while exempting or not reaching a substantial category of conduct that was not religiously motivated. *See Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3rd Cir. 2004) (wildlife regulation that created "a regime of individualized, discretionary exemptions" to permit fee requirement held not generally applicable); *Tenafly Eruv Assn., Inc. v. Borough of Tenafly*, 309 F.3d 144, 167 (3rd Cir. 2002) (facially neutral ordinance barring private citizens from affixing signs and other items to utility poles held not generally applicable where record demonstrated that Borough "has tacitly or expressly granted exemptions from the ordinance's requirements for various secular and religious . . . purposes"); *Draper v. Logan County Public Library*, 403 F. Supp. 2d 608, 621 (W.D. Kentucky 2005) (dress code that expressly prohibited the display of clothing or ornaments with a religious meaning held to single out religious conduct).  Here, as set forth in Defendants' Cross-Motion, the Town's amended ordinance treats all off-site, temporary directional signs to a qualifying event in the same manner. (*See* Dkt. No. 97, at p. 15.)  As such, the amended ordinance does not aim to infringe upon or restrict practices because of their religious motivation and does not selectively impose burdens only on conduct motivated by religious belief.

**III.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THE TOWN'S AMENDED ORDINANCE SUBSTANTIALLY BURDENS THE EXERCISE OF THEIR RELIGIOUS BELIEFS**

Plaintiffs' claim under the Arizona Religious Freedom Restoration Act (AzRFRA), A.R.S. § 41-1493.01 (Count Four), fails as well.  It is Plaintiffs' burden to establish that the Town's amended ordinance burdens the exercise of their religious beliefs, and Plaintiffs have failed to carry that burden.  *See State v. Hardesty*, 214 P.3d 1004, 1007 (Ariz. 2009) (discussing burden of proof under FERA).

- 7 -

Plaintiffs' allegations of their claimed religious motivation for advertising their Church are not probative evidence that their exercise of religion has been substantially burdened. As detailed in Defendants' Cross-Motion, the record is undisputed that Plaintiffs' professed religious exercise (proselytizing) is not burdened by the Town's amended ordinance. Even if advertising the Church through temporary directional signs could be considered an exercise in proselytizing, the record evidence shows that such signs are not the only, or even the most effective, way of spreading Plaintiffs' message. (See Dkt. No. 97, at pp. 3-6.)[4] Plaintiffs' argument that free, unfettered advertising on public property would be an even greater marketing tool for their church does not, as a matter of law, equate to a "substantial burden" on religious exercise. *See Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006). Nor is there any evidence that Plaintiffs have been "forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008). As such, there is no burden, let alone a substantial burden, on Plaintiffs' exercise of their religion as a matter of law.

**IV.   CONCLUDING THAT THE TOWN'S AMENDED ORDINANCE DOES NOT UNCONSTITUTIONALLY BURDEN PLAINTIFFS' RIGHTS UNDER THE FIRST AMENDMENT IS DISPOSITIVE OF PLAINTIFFS' EQUAL PROTECTION CLAIM**

Contrary to Plaintiffs' argument (Dkt. No. 106, at p. 14), Defendants addressed Plaintiffs' Equal Protection claim in Section II of their Cross-Motion (Dkt. No. 97, at pp. 7-13.) Because Plaintiffs' Equal Protection claim (Count Two) depends upon a finding that the Town has unconstitutionally burdened Plaintiffs' free speech or free exercise of religion, there is no need to address Plaintiffs' Equal Protection claims apart from addressing the

---

[4] Defendants have objected to and moved to strike Plaintiffs' claims relating to how effectively Plaintiffs' temporary directional signs increased attendance – a claim that Plaintiff expressly withdrew during discovery. Defendants incorporate, by reference, their objections to Plaintiffs' repeated, improper causation argument. (See Dkt. No. 105, Defendants' Response to Plaintiffs' Statement of Facts, ¶ 30.)

alleged violation of the underlying fundamental rights.  *See, e.g. Center for Bio-Ethical Reform v. City and County of Honolulu*, 455 F.3d 910, 924 (9th Cir. 2006) ("the viability of equal protection claims relating to expressive conduct is contingent upon the existence of a public forum.  Only when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged.").

## V.  CONCLUSION

For all the foregoing reasons, Defendants ask the Court to grant Defendants' Cross-Motion for Summary Judgment and enter judgment against Plaintiffs on all claims in Plaintiffs' Amended Verified Complaint.

RESPECTFULLY SUBMITTED this 29th day of October, 2010.

**GRASSO LAW FIRM P.C.**

By   s/ Jenny J. Winkler
Robert Grasso, Jr.
Kim S. Alvarado
Jenny J. Winkler
2430 W. Ray Rd., Suite 3
Chandler, AZ  85224
    Attorneys for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and by mail on the following who are not registered participants of the CM/ECF System:

Benjamin W. Bull, Esq.
Jeremy D. Tedesco, Esq.
**ALLIANCE DEFENSE FUND**
15333 North Pima Road, Suite 165
Scottsdale, Arizona  85260
*jtedesco@telladf.org*
   Attorneys for Plaintiffs

David A. Cortman
**ALLIANCE DEFENSE FUND**
1000 Hurricane Shoals Road, Suite D-600
Lawrenceville, Georgia 30043
*dcortman@telladf.org*
   Attorneys for Plaintiffs


By  s/ M.Halligan