BENJAMIN W. BULL
AZ Bar No. 009940
JEREMY D. TEDESCO
AZ Bar No. 023497
ALLIANCE DEFENSE FUND
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020; (480) 444-0028 facsimile
jtedesco@telladf.org

DAVID A. CORTMAN
GA Bar No. 188810
ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Rd., NE
Building D, Suite 600
Lawrenceville, GA 30043
(770) 339-0774; (770) 339-6744 facsimile
dcortman@telladf.org

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| Pastor Clyde Reed; and Good News Community Church,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>Town of Gilbert, Arizona; and Adam Adams in his official capacity as Code Compliance Manager,<br><br>　　　Defendants. | Case No. 2:07-cv-00522-SRB<br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.   DEFENDANTS CONCEDE THE SIGN CODE TREATS POLITICAL SPEECH
     MORE FAVORABLY THAN RELIGIOUS SPEECH. ............................................... 2

     A. Political Speech Is Not Any More Protected Than Religious Speech. ................... 3

     B. The Town Rights-Of-Way Are Traditional Public Forums. .................................... 4

     C. Defendants' Code is Vague and Permits Unbridled Discretion. ............................. 6

II. DEFENDANTS' CODE VIOLATES THE FREE EXERCISE CLAUSE. .................. 7

III. DEFENDANTS' MOTIONS TO STRIKE MUST BE DENIED. ............................... 8

     A. Defendants' Motion To Strike Pastor Reed's Affidavit Is Unavailing. .................. 8

     B. Defendants' Motion To Strike PSUF No. 30 Is Unavailing. ................................. 11

CONCLUSION ............................................................................................................. 11

i

# TABLE OF AUTHORITIES

*Cases:*

*Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976) .................................................. 5

*Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998) ......................... 7

*Church of Lukumi Babalu Aye v. city of Hialeah*, 508 U.S. 520 (1993) ............................ 8

*Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010) ...................... 4, 8

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) .................................................. 6

*G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006) ......................... 4

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) ................................. 7

*Huynh v. J.P. Morgan & Co.*, No. 06-0001, 2008 WL 2789532
(D. Ariz. July 17, 2008) ................................................................................................ 9, 10

*Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384 (1993) ................................ 5

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996)...... 11

*Melczer v. Unum Life Ins. Co.*, 259 F.R.D. 433 (D. Ariz. 2009) ...................................... 10

*Reed v. Town of Gilbert*, 587 F.3d 966 (9th Cir. 2009) .................................................. 1, 2

*Rules:*

Fed. R. Civ. P. 26(e) ........................................................................................................ 10

Local Rule 56.1(b).............................................................................................................. 1

*Other Authorities:*

Wright, Miller, & Kane, 10A Fed. Prac. & Proc. Civ. § 2722 (3d ed.) ............................. 1

The facts immediately below show that it is undisputed that Defendants treat political temporary signs more favorably than the Church's.  This content and viewpoint based discrimination renders the Sign Code unconstitutional under the Free Speech Clause, whether forum analysis is applicable or not, and regardless of the forum.  *See Reed v. Town of Gilbert*, 587 F.3d 966, 983 (9th Cir. 2009) (remanding this case for a determination of whether the Town's Code "impermissibly discriminates among certain forms of noncommercial speech," and noting that "Ideological Signs, Political Signs, and Qualifying Event Signs . . . face[] different restrictions and requirements").

Local Rule 56.1(b) provides that allegations in a party's Separate Statement of Facts are deemed admitted unless the opposing party disputes them with "the specific admissible portion of the record supporting the party's position."  The Town fails to follow this rule by either not citing the record at all, or citing portions of it that do not support its dispute.  Thus, among others, the Town has admitted the following facts:

1.  Plaintiffs' signs are speech protected by the First Amendment.  Plaintiffs' Statement of Undisputed Facts ¶ 56 ("PSUF") (admitted by Defendants, *see* Defendants' Response to Plaintiffs' Statement of Facts ("Def. Resp. PSUF")).

2.  A primary way in which the community may learn about the Plaintiffs' church services is through the signs that are placed announcing the time and location of the services.  PSUF ¶ 18.  Defendants attempt to dispute this fact by citing to facts about other ways the Church communicates with the public.  None of these facts contradict the assertion that the signs are a "primary" mode of communication.[1]

3.  Under the Sign Code, Political Signs are allowed without a permit, may be placed on property zoned for residential use, non-residential use, undeveloped Town property,

---

[1] Defendants also make the puzzling assertion that this factual allegation, as well as many others, are not proper evidence because their only source is a verified complaint.  Verified complaints are well-recognized sources of evidence for summary judgment purposes.  Wright, Miller, & Kane, 10A Fed. Prac. & Proc. Civ. § 2722, n.3 (3d ed.) ("A party's sworn pleading is the equivalent of an affidavit in a summary judgment proceeding.").  Since this is the only "evidence" cited by Defendants to support their denial of PSUF ¶¶ 10-17, 19-21, & 29, those allegations are deemed admitted.

and Town rights-of-way, may be up to 32 square feet in area and 6 feet in height.  The Sign code only requires that they be removed 10 days following an election, with no time constraint on when they can be posted prior to an election.  PSUF ¶ 37.  The Town says it denies this fact "in part," but doesn't say which part and merely cites the Sign Code and Mr. Milillo's Deposition – neither of which contradict this fact.  It is deemed admitted.

4.  The amended Sign Code permits the Church to place signs up to 12 hours before the Church's services, and they must be removed 1 hour after the services conclude.  PSUF ¶¶ 45, 46.  Defendants do not deny the facts in ¶ 45, and deny ¶ 46 in part, but do not say which part, and cite no evidence to the contrary.  These facts are deemed admitted.  In addition, the Church is prohibited from placing the signs in the right of way.  PSUF ¶ 50 (admitted by Defendants).

Based on these undisputed facts and the failure of Defendants to counter Plaintiffs' legal arguments, the court should grant Good News' motion for summary judgment.

## I.   DEFENDANTS CONCEDE THE SIGN CODE TREATS POLITICAL SPEECH MORE FAVORABLY THAN RELIGIOUS SPEECH.

Defendants testified at deposition that the Town treats signs differently based on "the message," and "what it says."   Plaintiffs' Motion for Summary Judgment and Memorandum of Law at 3-4 ("Pl. SJ Brf.").  Defendants cite absolutely no testimony to the contrary.  Instead, they attempt to obfuscate the facts by saying the Church is simply rehashing the contention that if signs must be read to enforce a sign ordinance, the law is content based.   But the testimony indicates Town officials are not merely making a "cursory examination … not akin to an officer synthesizing the expressive content of the sign."  *Reed v. Town of Gilbert*, 587 F.3d 966, 978 (9th Cir. 2009).  Determining what the message of a sign is by what it says *is* synthesizing its expressive content.

This Court's Order on Preliminary Injunction [Doc. 43] notes that the face of the Sign Code – which is all the evidence it had before it at the time – indicates all an officer must do is determine if the sign contains the elements of a directional sign.  Thus, it would be "wholly unnecessary to read a single word printed on the sign."  *Id.* at 10-11.  But subsequent discovery indicates this is not the way the Sign Code is enforced at all.

Defendants' witnesses testified that they have to determine the "message" of the sign.  In its previous ruling, this Court also had to assume that Sign Code enforcers could merely look at whether a sign had the required permit to distinguish it from directional signs and ascertain which provision of the Sign Code to apply.  *Id.* at 11.  But the evidence is now clear that many non-commercial signs, like ideological and political signs, do not require a permit.  PSUF ¶¶ 36 & 37 (Defendants only deny the facts in these paragraphs in part, and concede a permit is not required for either).  In response to a question concerning how those responsible for applying the Sign Code determine which provisions to apply to a particular sign, Michael Milillo testified:

> Well, like anything in the zoning code, you've got to review each individual case and ***review each individual sign that comes before you to see what the elements are, what is the message.***  Is it identifying a business? If it's identifying a business and it's in a certain zoning district, it's not going to be an ideological sign.  You know, if it's just a sign that's ***communicating a message*** and it has no purpose in identifying a specific business or site and you can't categorize it as anything else in the glossary of the sign types, then perhaps it's an ideological sign.

Milillo Dep. at 21-22 (Ex. 1)[2] (emphasis added).  This is not merely reading a sign to determine speaker identity or if there are elements of a directional sign in it.  Rather, this is making distinctions based on content, which is constitutionally impermissible.[3]

**A. Political Speech Is Not Any More Protected Than Religious Speech.**

Defendants apparently recognize that they treat political speech better than the Church's speech based on content because they do not deny it anywhere in their Response to Plaintiffs' Motion for Summary Judgment ("Def. Opp. Brf.").  Instead they reiterate their misguided contention that this discrimination is justified because "certain speech, at certain places, and even at certain times, is in fact accorded higher protection under the First Amendment."  Def. Opp. Brf. at 8 n.7.  In other words, they claim that political speech is more valuable than religious speech–especially during election season.

---

[2] Exhibits are attached to Pl. SJ Brf., unless otherwise indicated.

[3] Additional testimony further proving the content-based distinctions the Town makes among signs is highlighted in Plaintiffs' summary judgment brief at pages 4 and 10.

This argument suffers from numerous fatal flaws.  First, the favorable treatment given political signs is not limited to election season.  The undisputed facts are that there is absolutely no limit on the length of time before an election a political sign can be erected.  Defendants did not even attempt to counter the Church's demonstration in its opening brief that Senator McCain can start posting signs for a presidential bid in 2012 now.

Second, Defendants fail to cite a single case saying political speech is more protected than religious, or any other type of speech.  *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064 (9th Cir. 2006), certainly does not.  The Ninth Circuit understandably determined that a permit requirement in a sign ordinance that made exceptions for *all* temporary signs – regardless of content – was not content based.  *Id.* at 1077.  Unlike the Defendants' Sign Code here, the City of Lake Oswego's code specifically provided that "[t]his signage shall not be restricted by content, but is usually and customarily used to advertise real estate sales, political or ideological positions, garage sales, home construction or remodeling, etc."  *Id.*  Political speech was not given more favorable treatment than religious or ideological speech.

Defendants also cite *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), but that case did not even address whether political speech is any more protected than other types of speech.  *Citizens United* actually cuts against Defendants' contention that their ordinance is just a content neutral law that makes permissible distinctions based on speaker identity.  Def. Opp. Brf. at 2 n.1.  The Supreme Court held that "[p]rohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others.   As instruments to censor, these categories are interrelated: ***Speech restrictions based on the identity of the speaker are all too often simply a means to control content***."  *Citizens United*, 130 S. Ct. at 898-99 (emphasis added).  Defendants' concession that their code is speaker-based proves that it is unlawfully content-based.

**B.  The Town Rights-Of-Way Are Traditional Public Forums.**

As shown in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 3-5 ("Pl. Opp. Brf."), forum analysis is not applicable to sign code cases like this one.  Moreover, the areas along public streets and sidewalks are traditional, not limited public

forums.  *Baldwin v. Redwood City*, 540 F.2d 1360, 1366 (9th Cir. 1976).  Content based discrimination is unconstitutional in traditional public forums, making Defendants' favorable treatment of political speech unconstitutional.  *Id.*

Defendants do not deny this content based discrimination, but argue that it is permissible because the areas along Gilbert's streets and sidewalks are limited public forums.  The Town does not cite a single case that has held similar areas are designated public forums.  (*See* Pl. Opp. Brf. at 3-5 for numerous cases demonstrating it is a traditional public forum).  Moreover, the Sign Code does not survive even under a limited public forum analysis because it is viewpoint discriminatory.

The Sign Code would allow Senator McCain to begin placing signs in Gilbert's rights of way now saying, "McCain for President 2012, Attend a Rally at Campaign Headquarters this Friday Night."  As long as those signs are taken down within 10 days after the election, they can remain up indefinitely and be on an 8x4 sheet of plywood.  But the Church cannot even put up a 2x3 sign saying "Vote Biblical Values – Attend Church Services this Sunday at Ryan Elementary School to Find Out How" until 12 hours before the event.  And they have to take it down within 1 hour after the event.  PSUF ¶¶ 45-47.  *See* Milillo Dep. at 30 (testifying that a Church sign with a political message and directions to a qualifying event would be not be considered a political sign).

This blatant viewpoint discrimination is unconstitutional, regardless of the forum.  *See Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384 (1993) (denial of use of school facilities after hours to show religious film on parenting was impermissibly viewpoint discriminatory if a secular film on parenting would have been allowed).

Defendants argue there is no differential treatment because the Church could put up signs every day, if it had services every day.  Def. Opp. Brf. at 6.  But no such conditions are placed on political speech.  Senator McCain can keep his larger signs up indefinitely, even if he has rallies just once a week, or once a month.  Further, an election is a one day event, like Plaintiffs' church service, yet political signs related to an election can be up

for years while the Church gets about 14 hours to place signs about its Sunday service.[4]

Under forum analysis, whether deemed traditional or limited, the Sign Code is both content and viewpoint discriminatory, and therefore must be subjected to strict scrutiny. *See* Pl. Opp. Brf. at 10. Defendants have not even attempted to articulate a compelling interest for the simple reason that there is none. *See* Pl. SJ Brf. at 8-9. The Church is entitled to summary judgment on its free speech claim.

**C. Defendants' Code is Vague and Permits Unbridled Discretion.**

Defendants ignore the law cited by Plaintiffs demonstrating that impermissibly vague laws are problematic because they give government officials unbridled discretion which can lead to discriminatory enforcement. Pl. SJ Brf. at 9. The testimony of Defendants' witnesses demonstrates that danger exists here. Milillo testified in his deposition that determining whether a sign is political or religious may vary based upon which member of the staff is enforcing it. Milillo Dep. at 30 (Ex. 1).

Instead of pointing to written criteria that would help to limit the discretion of Town officials enforcing the Code, Defendants claim that a law cannot be deemed impermissibly vague based on hypothetical situations – like the possibility of a sign with both religious and political speech on it. Def. Opp. Brf. at 10. They cite no case to support this contention and it has been rejected by the Ninth Circuit. "[W]e are not confined to examining the vagueness of the ordinance only as applied to [the Plaintiffs'] activities. A facial challenge is permissible when the statute in question clearly implicates free speech rights." *Foti v. City of Menlo Park*, 146 F.3d 629, 639 n.10 (9th Cir. 1998).

---

[4] Defendants' attempts to distinguish the much longer duration (as compared to the duration permitted for Plaintiffs' signs) for weekend directional signs advertising real estate sales are similarly unconvincing. They claim that weekend real estate sale signs are permitted from Friday at 6:00 p.m. until Monday at 8:00 a.m. because the events last from sundown on Friday until sun up on Monday. Def. Opp. Brf. at 6. Is it really the Town's position that homebuilders do not sleep, and that their sales events are open around the clock on weekends? Of course not. The reality is that the Town treats homebuilders better than Churches, based on the content of their sign/event. And Plaintiffs would gladly pay the yearly fee for a rubber stamp permit like the one available to homebuilders, which gives them far more ability to place signs than the Church.

6

For instance, the Ninth Circuit determined that the term "training" in a law prohibiting support for foreign terrorist organizations was impermissibly vague based on the following hypothetical: "it is easy to imagine protected expression that falls within the bounds of this term. For example, a plaintiff who wishes to instruct members of a designated group on how to petition the United Nations to give aid to their group could plausibly decide that such protected expression falls within the scope of the term 'training.'" *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1138 (9th Cir. 2000).

Defendants' reliance on *Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998), is misguided. First, the language Defendants cite from *Children of Rosary* regarding transforming advertisements from ideological to commercial had nothing to do with the vagueness analysis. Second, the rule at issue there was not impermissibly vague for two reasons that do not apply here. Rejection of an advertisement based on the potentially vague rule did not result in a fine, so the standard for impermissible vagueness was lower. *Id.* at 983. The Town admits in this case that the "Code provides for civil sanctions in the form of fines and conceivably incarceration...." Def. Resp. PSUF at ¶ 28. And the City of Phoenix in *Children of the Rosary* adopted a specific "test" for determining whether an advertisement was commercial. 205 F.3d at 983. Here, there are no tests or other guidelines for determining whether a sign is political, ideological, or merely directional – and that determination is much more difficult to make.

## II. DEFENDANTS' CODE VIOLATES THE FREE EXERCISE CLAUSE.

Good News cites numerous cases showing the Sign Code is not generally applicable, and that it satisfies all the requirements for a FERA claim. Pl. SJ Brf. at 11-16. The Town does not try to distinguish these cases, or counter the FERA claim (other than making the unsupported statement that it is entitled to summary judgment on it). Instead, the Town makes the legally and factually inaccurate argument that the Sign Code is generally applicable because it treats all non-profits the same and it "does not selectively impose burdens only on conduct motivated by religious belief." Def. SJ Opp. at 11-12.

Conspicuously absent from Defendants' free exercise argument is a reference to its favorable treatment of political speakers. Political speech is often engaged in by non-

profits like the organization in *Citizens United*. 130 S. Ct. at 886. Under the Sign Code, these political non-profits are given preferential treatment.[5] And even if the amended Sign Code did treat all non-profits the same, adding a few other organizations to the disfavored group does not obviate the religious discrimination – especially if there is evidence the Town is attempting to gerrymander its ordinance so as to continue its discrimination against religious organizations. "The Free Exercise Clause protects against government hostility which is masked, as well as overt." *Church of Lukumi Babalu Aye v. city of Hialeah*, 508 U.S. 520, 534 (1993). *See* Pl. SJ Brf. at 13.

The Town does not address the evidence in this case indicating hostility toward religious organizations. *See* PSUF ¶ 44. Defendants deny this fact, but cite no evidence to the contrary, so it is deemed admitted. This religious discrimination is subject to strict scrutiny. *Lukumi*, 508 U.S. at 531-32. As with Plaintiffs' free speech claims, the Sign Code cannot survive strict scrutiny and Defendants make no attempt to argue that it does.

**III. DEFENDANTS' MOTIONS TO STRIKE MUST BE DENIED.**

**A. Defendants' Motion To Strike Pastor Reed's Affidavit Is Unavailing.**

In accordance with Fed. R. Civ. P. 56(e), Pastor Reed submitted an Affidavit in Support of Motion for Summary Judgment. ("Reed SJ Aff."). The affidavit included 56 photographs taken on July 11, 2010, and August 23, 2010. The purpose of the affidavit was to demonstrate that numerous temporary signs are displayed along the streets and sidewalks of Gilbert. Pl. SJ Brf. at 3. Among other things, the affidavit and its exhibits show the proliferation of political signs that are allowed, by the terms of the ordinance, to be placed on Town rights-of-way, without a permit, and with no time constraint on when they can be posted before an election. Defendants complained that they could not tell if the political signs depicted in the photos met the requirement that they be placed at least 15 feet back from the curb, and suggested that the signs could therefore be displayed

---

[5] Defendants also summarily dismiss, in a footnote, Plaintiffs' equal protection claim based on the same faulty assertion that the Code treats all non-profits alike. Def. Opp. Brf. at 11 n.8. But the Town's favorable treatment of political nonprofits demonstrates why Good News is entitled to summary judgment on its equal protection claim as well.

illegally.  Def. Resp. PSUF, Ex. A, Adams Affidavit ¶ 11.[6]  But it matters not whether a few of these signs were placed closer than 15 feet from the curb, because it is undisputed that such political signs could still be displayed if they were simply moved a few feet back.  *See* Joint Stipulated Statement of Facts, Ex. A. at 4, §4.402.I.1 (political signs may be placed in the right of way, so long as they are "located within 15 feet of back of curb").[7] It is also noteworthy that, after reviewing Mr. Adams' affidavit suggesting that the political signs depicted in Pastor Reed's initial affidavit may have been illegally placed, Pastor Reed revisited the same locations at a later date and observed numerous political signs at all but one of them.  *See* Reed Reply Aff. Exs. 57-90.

Defendants contend that Pastor Reed's affidavit lacks sufficient foundation to be considered as evidence.  But this is really an objection as to the materiality of the facts contained in it.  This Court has held similar objections at the summary judgment stage to be redundant of the summary judgment standard itself.  *Huynh v. J.P. Morgan & Co.*, No. 06-0001, 2008 WL 2789532 (D. Ariz. July 17, 2008).  Judges are perfectly capable of determining which facts in an affidavit are material.

That is especially true here where Defendants have not argued that the photographs are inaccurate.  Defendants' sole reason for striking this testimony is that Pastor Reed is not competent to testify as to whether these signs are in the right-of-way.  But as noted *supra*, this is merely a red herring since the Town's Code allows political signs in the

---

[6] Importantly, in his affidavit, Mr. Adams does not dispute that the Sign Code allows all of the signs depicted, and he only speculates that some of the signs may be a few feet out of the right of way.  Also, as noted in Pastor Reed's affidavit, the Defendants provided conflicting testimony on where the right of way is located, Reed SJ Aff. ¶¶ 50-52, so it is impossible for each sign placer to know the exact location of the right of way.

[7] It is disingenuous for Defendants to state that "even assuming that many of the signs depicted in the photographs actually are located within the right-of-way, this only establishes that others are violating the Land Code."  Def. Opp. Brf. at 7 n.6.  Defendants admit on page five of their brief that political signs, commercial A-frame signs, and weekend real estate sale signs, *are permitted in the right of way*.  Since about 99% of the signs depicted in the exhibits to Pastor Reed's Affidavit are these types of signs, Defendants' claim that "others are violating the Land Code" is simply false.  The Town's Code permits such signs in the right of way under its express terms.

right of way if placed 15 feet back of the curb.  Any political signs depicted in the exhibits to the Pastor's affidavit that fall closer than 15 feet to the curb could simply be moved a few feet back and remain "legal" under the Ordinance.

Defendants also complain that the affidavit itself was not timely disclosed.  Untrue.  Fed. R. Civ. P. 56(e) plainly contemplates submission of affidavits in support of summary judgment.  There is no requirement that the affidavit be executed prior to the close of discovery, and Defendants cite no authority for this assertion.

Defendants also maintain the photographs (taken in July and August, 2010) must be stricken because they were taken after the discovery cut-off of May 28, 2010.  Once again, Defendants fail to cite a single rule or case that supports this assertion, and the rules contemplate the contrary.  Fed. R. Civ. P. 26(e) *requires* parties to supplement Rule 26(a) disclosures with "additional or corrective information."  There is no requirement that it be disclosed within a certain time, merely that it be done "in a timely manner."  That obligation was met in this case as the photographs were disclosed on August 24, 2010, one day after the second set of photos was taken, and six weeks after the first set.

Moreover, this Court held in *Huynh* that the duty to supplement disclosures continues even after the deadline for completion of discovery.  2008 WL 2789532, at *25.  None of Defendants' cases hold otherwise since they did not consider new evidence obtained after discovery was closed, and did not address exclusion of evidence at the summary judgment stage.  *See, e.g., Melczer v. Unum Life Ins. Co.*, 259 F.R.D. 433, 435-36 (D. Ariz. 2009) (documents excluded from use at trial because they were in defendant's possession prior to discovery cut-off, but not disclosed until after discovery closed).

Finally, Defendants have failed to show how Pastor Reed's Affidavit and attached photographs prejudice them in any way.  They were able to submit their own affidavits in an attempt to counter any facts they dispute.  Moreover, the signs are publicly displayed throughout the Town for all, including Defendants, to see during the entire time displayed. Defendants' motion to strike the affidavit should be denied.

**B.  Defendants' Motion To Strike PSUF No. 30 Is Unavailing.**

Defendants' motion to strike PSUF ¶ 30, which states that the Church's highest attendance occurred when they could display their signs on equal terms with other similar signs, should also be denied.  Defendants claim that any statement purporting to establish a causative link between attendance at Plaintiffs' services and their placement of signs is impermissible pursuant to an agreement between the parties resolving a discovery dispute.  Def. Resp. PSUF at 5.  However, PSUF No. 30 is based on testimony elicited from Pastor Reed by Defense Counsel, based on Church attendance records that were disclosed during discovery.  Reed Dep. at 12 (Ex. 6).  These records indicated that the Church's high attendance mark of 38 occurred during a time when they could place signs on the same terms as others.  PSUF ¶ 30 should not be stricken.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for summary judgment.

Respectfully submitted this 29th day of October, 2010.

s/Jeremy D. Tedesco

| | |
|---|---|
| Benjamin W. Bull | David A. Cortman* |
| AZ Bar No. 009940 | GA Bar No. 188810 |
| bbull@telladf.org | dcortman@telladf.org |
| Jeremy D. Tedesco | Alliance Defense Fund |
| AZ Bar No. 023497 | 1000 Hurricane Shoals Rd., NE |
| jtedesco@telladf.org | Building D, Suite 600 |
| Alliance Defense Fund | Lawrenceville, GA 30043 |
| 15100 N. 90th Street | (770) 339-0774; (770) 339-6744 Fax |
| Scottsdale, AZ 85260 | *Admitted pro hac vice |
| (480) 444-0020; (480) 444-0028 Fax | Attorneys for Plaintiffs |

---

[8] Defendants also object to Exhibit 5 to Plaintiffs' Summary Judgment Motion, which contains permits issued by the Town for weekend directional real estate sale signs, on the basis that "the permits are not proper evidence under Rule 56, Fed. R. Civ. P."  Def. Resp. PSUF at 7.  This is plainly wrong.  Defendants produced these permits in response to Plaintiffs' discovery requests.  Federal courts have held that discovery documents produced by a party are deemed authentic when offered by a party-opponent.  *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996).

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on October 29, 2010, I electronically filed the foregoing paper

3

with the Clerk of Court using the ECF system which will send notification of such filing

4

to the following:

5

6

Kim S. Alvarado
Grasso Law Firm, P.C.

7

2430 West Ray Road, Suite 3
Chandler, AZ 85224

8

9

*Attorney for Defendants*

10

11
                                    s/Jeremy D. Tedesco
                                    JEREMY D. TEDESCO

12
                                    AZ Bar No. 023497
                                    ALLIANCE DEFENSE FUND

13
                                    15100 N. 90th Street

14
                                    Scottsdale, AZ 85260
                                    (480) 444-0020; (480) 444-0028 facsimile

15
                                    jtedesco@telladf.org

16

17

18

19

20

21

22

23

24

25

26

27

28